UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEAMFITTERS LOCAL 449 PENSION FUND, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) | Civil Action No. 09-4730 <br><br> CLASS ACTION |
| Plaintiff, | ) ) | WESTERN PENNSYLVANIA ELECTRICAL EMPLOYEES PENSION |
| vs. | ) ) ) | FUND'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR |
| ADVANTA CORP., et al., | ) ) | APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF ITS SELECTION OF |
| Defendants. | ) ) ) | COUNSEL |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..........................................................................................................1

II. STATEMENT OF FACTS .............................................................................................2

III. ARGUMENT..................................................................................................................4

    A. The Pension Fund Should Be Appointed Lead Plaintiff.........................................4

        1. This Motion Is Timely .................................................................................5

        2. The Pension Fund Has the Largest Financial Interest in the Relief Sought by the Class......................................................................................5

        3. The Pension Fund Otherwise Satisfies Rule 23 of the Federal Rules of Civil Procedure ........................................................................................5

    B. The Court Should Approve the Pension Fund's Selection of Counsel....................7

IV. CONCLUSION................................................................................................................8

Class member Western Pennsylvania Electrical Employees Pension Fund (the "Pension Fund") respectfully submits this memorandum of law in support of its motion for: (i) appointment as lead plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4(a)(3)(B); and (ii) approval of its selection of Coughlin Stoia Geller Rudman & Robbins LLP ("Coughlin Stoia") as lead counsel and the Law Offices Bernard M. Gross, P.C. ("Bernard Gross") as liaison counsel for the class.

## I.     INTRODUCTION

Presently pending in this District is a class action lawsuit brought on behalf of all persons who purchased or otherwise acquired the Class A and/or Class B common stock of Advanta Corp. ("Advanta" or the "Company") between October 31, 2006 and November 27, 2007, inclusive (the "Class Period"), against Advanta and certain of its officers and/or directors for violations of the Securities Exchange Act of 1934 (the "1934 Act").  Pursuant to the PSLRA, the Court is to appoint as lead plaintiff the "members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. §78u-4(a)(3)(B)(i). The "most capable" plaintiff, *i.e.*, the lead plaintiff, is the "person or group of persons" that timely demonstrates they have "the largest financial interest in the relief sought by the class" and "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I).

As explained herein, the Pension Fund not only satisfies the PSLRA's lead plaintiff requirements, but is also accustomed to acting as a fiduciary and selecting and directing counsel. In addition, the Pension Fund selected Coughlin Stoia and Bernard Gross to serve as lead and liaison counsel, law firms with extensive securities class action experience that will adequately represent the interests of all class members.  Because the Pension Fund has triggered the "most adequate plaintiff" presumption, its motion should be granted.

## II. STATEMENT OF FACTS

Advanta, headquartered in Spring House, Pennsylvania, was formerly one of the nation's largest issuers of MasterCard and some Visa credit cards to small businesses and professionals in the United States, through its subsidiary, Advanta Bank Corp. ("Advanta Bank"). The Company's business credit card accounts provided approved customers with unsecured revolving business credit lines.

The complaint alleges that during the Class Period, defendants issued materially false and misleading statements regarding the Company's business and financial results. Defendants damaged Advanta's investors by failing to disclose the impact of the economic environment and the deteriorating credit trends on its business. The Company also failed to adequately and timely record losses for its impaired loans and customer delinquencies, causing its financial results to be materially false. The continued deterioration of credit trends during 2007 was a major threat to Advanta's business. This would lead to severe problems in the long-term for the Company itself, yet defendants concealed the impact of these trends on the Company so as to unjustly enrich themselves. Defendants also concealed the adverse effects the Company's manipulations of its cash rewards program was having on its business. As a result of defendants' false statements, Advanta's stock traded at artificially inflated prices during the Class Period, reaching a high of $34.07 per share on June 19, 2007.[1]

On November 27, 2007, Advanta held a conference call with analysts and investors to discuss the Company's business performance during which Advanta announced that guidance for 2008 would not be released due to the volatility of the economy. Advanta also disclosed a higher percentage of customers had become delinquent on their credit card payments and a lower

---

[1]   All share pricing is adjusted for Advanta's June 2007 three-for-two stock split.

percentage of customers made payments since the release of the third quarter 2007 results on October 25, 2007, indicating a trend of charge-offs. After these disclosures, Advanta stock collapsed, closing on November 27, 2007 at $11.06 per share, and falling to as low as $9.35 per share on November 28, 2007, a decline of 72% from Advanta's Class Period high of more than $34.00 per share in June 2007.

The news for Advanta's investors only got worse after the disclosure as the Company cancelled millions of cards held by small businesses in May 2009 and was hit with a Cease and Desist Order from the Federal Deposit Insurance Corporation ("FDIC") for improper practices dating back to 2004. On November 9, 2009, Advanta filed a suggestion of bankruptcy in this Court.

The complaint alleges that the true facts, which were known by the defendants but concealed from the investing public during the Class Period, were as follows: (a) Advanta's assets contained tens of millions of dollars worth of impaired credit card receivables for which the Company had not accrued losses; (b) prior to and during the Class Period, Advanta had been extremely aggressive in granting credit to customers without verifying the customers' ability to pay, to such a degree that by the summer of 2009, Advanta customers' default rate would be almost six times worse than industry average; (c) Advanta's manipulation of its cash rewards program angered customers and caused the Company to lose good, creditworthy customers; (d) Advanta's credit receivables were unduly risky due to the Company's practice of issuing credit cards to small business owners without, in many instances, verifying income; (e) to compensate for its loose credit approval process, Advanta would dramatically increase interest rates to the degree where even customers who paid on time would suddenly see their interest rates double or triple, infuriating customers and causing creditworthy customers to leave the Company; (f) defendants failed to properly account for Advanta's continuing delinquent customers and the credit trends in the Company's portfolio, resulting ultimately in large charges to reflect impairments; and (g) the Company was not on track to be profitable in 2008.

As a result of defendants' false statements, Advanta stock traded at inflated levels during the Class Period. And after the truth leaked out to the market, the Company's shares were hammered by massive sales, sending them down more than 72% from their Class Period high. This decline in Advanta's stock price was a result of the artificial inflation caused by defendants' misleading statements coming out of the stock price. As a result of defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's stock, plaintiff and the other class members have suffered significant damages.

## III.     ARGUMENT

### A.     The Pension Fund Should Be Appointed Lead Plaintiff

The PSLRA establishes the procedure for the appointment of a lead plaintiff in "each private action arising under [the 1934 Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1); *see also* 15 U.S.C. §78u-4(a)(3)(B)(i). First, the pendency of the action must be publicized in a widely circulated national business-oriented publication or wire service not later than 20 days after filing of the first complaint. 15 U.S.C. §78u-4(a)(3)(A)(i). This notice advises class members of: (1) the pendency of the action; (2) the claims asserted therein; (3) the proposed class period; and (4) the right to move the court to be appointed as lead plaintiff within 60 days of publication of the notice. *Id.* Here, notice was published on October 14, 2009, on *Business Wire*. *See* Declaration of Deborah R. Gross in Support of Western Pennsylvania Electrical Employees Pension Fund's Motion for Appointment as Lead Plaintiff and Approval of Its Selection of Lead Counsel ("Gross Decl."), Ex. A.

Next, the PSLRA provides that the court shall adopt a presumption that the most adequate plaintiff is the person or group of persons that:

> (aa) has either filed the complaint or made a motion in response to a notice . . . ;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

- 4 -

> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii)(I). The Pension Fund meets each of these requirements and should therefore be appointed as lead plaintiff.

### 1. This Motion Is Timely

The notice published on October 14, 2009 informed class members that the deadline to move for appointment as lead plaintiff was in 60 days, or December 13, 2009. *See* Gross Decl., Ex. A; 15 U.S.C. §78u-4(a)(3)(A). Because the 60-day deadline falls on December 13, 2009, a Sunday, pursuant to Fed. R. Civ. P. 6(a)(1)(C), December 14, 2009 is the "next day that is not a Saturday, Sunday, or legal holiday" and this motion is therefore timely filed. *Id.*

In addition, the Pension Fund has submitted a sworn certification confirming its willingness and ability to serve as lead plaintiff. *See* Gross Decl., Ex. B; *In re Sterling Fin. Corp. Sec. Class Action*, No. 07-2171, 2007 U.S. Dist. LEXIS 93708, at *11 (E.D. Pa. Dec. 21, 2007). Thus, the Pension Fund has complied with the PSLRA's procedural requirements and is entitled to be considered for appointment as lead plaintiff.

### 2. The Pension Fund Has the Largest Financial Interest in the Relief Sought by the Class

The Pension Fund suffered more than $257,000 in losses due to defendants' misconduct. *See* Gross Decl., Exs. B-C. To the best of its knowledge, there are no other applicants who have sought, or are seeking, appointment as lead plaintiff that have a larger financial interest. Therefore, the Pension Fund satisfies the PSLRA's largest financial interest requirement.

### 3. The Pension Fund Otherwise Satisfies Rule 23 of the Federal Rules of Civil Procedure

In addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). "Of the four requirements in Rule 23," this Court

has previously held that it "need only address the last two, typicality and adequacy." *Greater Pa. Carpenters Pension Fund v. Adolor Corp.*, No. 04-CV-1728, 2004 U.S. Dist. LEXIS 26205, at *8 (E.D. Pa. Dec. 29, 2004) (Surrick, J.).

The adequacy and typicality requirements "'serve as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Amchem Prods. v. Windsor*, 521 U.S. 591, 626 n.20 (1997) (citation omitted). "Typicality exists where the plaintiff's claims arise from the same series of events and are based on the same legal theories as the claims of all the class members." *Adolor*, 2004 U.S. Dist. LEXIS 26205, at *8 (citing *In re Cendant Corp. Litig.*, 264 F.3d 201, 263 (3d Cir. 2001)). Adequacy requires: "(1) the absence of potential conflict between the proposed lead plaintiff and the class members, and (2) the class representative's choice of counsel who is qualified, experienced, and able to vigorously conduct the proposed litigation." *Id.* at *9.

The Pension Fund easily satisfies the typicality and adequacy requirements at this stage. Like all class members, the Pension Fund purchased Advanta stock during the Class Period at allegedly inflated prices and suffered damages as a result. Accordingly, the Pension Fund's "claims are typical of those of other class members since their claim and the claims of other class members arise out of the same course of events." *Id.* In addition, the Pension Fund's $257,000 loss indicates it has the "incentive to represent the claims of the class vigorously." *Sterling*, 2007 U.S. Dist. LEXIS 93708, at *14. The Pension Fund is not aware of any conflicts between its claims and those asserted by the class. Finally, as discussed below, the Pension Fund has selected qualified counsel experienced in securities litigation.

The Pension Fund's common interests shared with the class, its substantial financial interest and its selection of qualified counsel demonstrates that the Pension Fund *prima facie* satisfies the Rule 23 inquiry at this juncture.

### B. The Court Should Approve the Pension Fund's Selection of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to this Court's approval. *See* 15 U.S.C. §78u-4(a)(3)(B)(v). This Court should not disturb the lead plaintiff's choice of counsel unless it is necessary to "protect the interests of the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa).

The Pension Fund has selected Coughlin Stoia to serve as lead counsel. Coughlin Stoia, a 190-lawyer firm with offices nationwide, is actively engaged in complex litigation, particularly securities litigation. *See* Gross Decl., Ex. D. District courts throughout the country have noted Coughlin Stoia's reputation for excellence, which has resulted in the appointment of Coughlin Stoia attorneys to lead roles in hundreds of complex class action securities cases. *See, e.g.*, *In re Enron Corp. Sec.*, 586 F. Supp. 2d 732, 797 (S.D. Tex. 2008) (Harmon, J.) (commenting that the "experience, ability, and reputation of the attorneys of Coughlin Stoia is not disputed; it is one of the most successful law firms in securities class actions, if not the preeminent one, in the country"); *Adolor*, 2004 U.S. Dist. LEXIS 26205, at *10 (approving institutional investors' selection of lawyers with Coughlin Stoia as lead counsel). The Pension Fund has also selected Bernard Gross as liaison counsel, a firm which has been active in securities litigation for 30 years, and this Court has previously expressed its "confiden[ce]" that Bernard Gross was "qualified to serve as liaison counsel." *See* Gross Decl., Ex. E. *See Cortese v. Radian Group, Inc.*, No. 07-3375, 2008 U.S. Dist. LEXIS 6958, at *19 (E.D. Pa. Jan. 30, 2008) (McLaughlin, J.) (approving institutional investors' selection of Coughlin Stoia and Bernard Gross as class counsel).

The Court may be assured that in the event this motion is granted, the members of the class will receive the highest caliber of legal representation available from Coughlin Stoia and Bernard Gross. Accordingly, the Pension Fund's selection of counsel should be approved.

## IV. CONCLUSION

The Pension Fund has satisfied each of the PSLRA's requirements for appointment as lead plaintiff. As such, the Pension Fund respectfully requests that the Court appoint the Pension Fund as Lead Plaintiff, approve its selection of counsel, and grant such other relief as the Court may deem just and proper.

DATED: December 14, 2009

Respectfully submitted,

LAW OFFICES BERNARD M.
  GROSS, P.C.
DEBORAH R. GROSS

s/ DEBORAH R. GROSS – DG639
DEBORAH R. GROSS

Wanamaker Bldg., Suite 450
100 Penn Square East
Philadelphia, PA  19107
Telephone:  215/561-3600
215/561-3000 (fax)

[Proposed] Liaison Counsel

COUGHLIN STOIA GELLER
  & ROBBINS LLP
DARREN J. ROBBINS
DOUGLAS R. BRITTON
DANIELLE S. MYERS
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

[Proposed] Lead Counsel for Plaintiff

CERTIFICATE OF SERVICE

I hereby certify that on December 14, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on December 14, 2009.

                                              s/ DEBORAH R. GROSS – DG639
                                              DEBORAH R. GROSS

                                              LAW OFFICES BERNARD M.
                                                  GROSS, P.C.
                                              DEBORAH R. GROSS
                                              Wanamaker Bldg., Suite 450
                                              100 Penn Square East
                                              Philadelphia, PA  19107
                                              Telephone:  215/561-3600
                                              215/561-3000 (fax)
                                              E-mail:  debbie@bernardmgross.com

## Mailing Information for a Case 2:09-cv-04730-CMR

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **JEFFREY ROBERT BOLES**
  jeffrey.boles@dechert.com

- **STEVEN B. FEIRSON**
  steven.feirson@dechert.com

- **GEORGE M. GOWEN , III**
  ggowen@cozen.com

- **DEBORAH R. GROSS**
  debbie@bernardmgross.com

- **MICHAEL L. KICHLINE**
  michael.kichline@dechert.com,lisa.ricchezza@dechert.com

- **JEFFREY G. WEIL**
  jweil@cozen.com

- **SARAH L. WESTBROOK**
  sarah.westbrook@dechert.com,lisa.ricchezza@dechert.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
TAMAR S. WISE
COZEN O'CONNOR
1900 MARKET ST
PHILADELPHIA, PA 19103
```