# EXHIBIT E

**LAW OFFICES BERNARD M. GROSS, P.C.** (the "Firm"), is committed to providing professional, efficient, and attentive legal services. We are nationally recognized lawyers concentrating on helping individuals, classes of individuals, or businesses who have been injured as a result of violations of antitrust laws, securities laws, ERISA laws, or consumer protection laws or another's negligence and fraud in federal and state courts throughout the country. The Firm has also represented shareholders in their fight for changes in corporate governance.

We take our cases on a contingent fee basis. Our attorneys are strong believers in the contingent fee as a socially useful, productive, and satisfying basis for compensation of legal services, particularly in litigation. It is not the number of hours that determines our fee, rather it is the result achieved for our clients.

We value practicing in a small environment where professional and personal interaction, among all, is essential for a team approach to cases. The Firm's structure allows for a far greater degree of independence, flexibility, and satisfaction than a large firm environment without sacrificing the quality and sophistication of representation necessary to litigate complex civil actions successfully throughout the United States.

Judges throughout the country have recognized contributions of the Firm in class action cases. Recently, in approving an $82.5 million settlement of a securities fraud lawsuit against Aetna, Inc. in the United States District Court for the Eastern District of Pennsylvania, in which the Firm was co-lead counsel, Judge Padova stated:

> "Furthermore, class counsel is of high caliber with extensive experience in similar class action litigation . . . consistently submitted documents of superb quality, and were very diligent in preparing filings in a timely manner under tight deadlines . . . . This Court has made special note of the efficiency and professionalism of counsel in completing discovery and resolving discovery disputes with little court intervention."

I*n re Aetna Inc. Securities Litigation*, MDL No. 1219 (E.D.Pa. January 5, 2001). Similarly, in approving a settlement of $106 million in the United States District Court for the Eastern District of Pennsylvania, in *In re Automotive Refinishing Paint Antitrust Litigation*, MDL 1426, Judge Surrick commented on Law Offices Bernard M. Gross, P.C., noting:

> I want to commend counsel on both sides of this litigation. I think that the representation on both sides of this litigation is as good as I've ever seen in my entire professional career. Counsel worked together in this case. They frankly made the job of this Court very easy and I commend all of you for what you've done in this litigation.

pp. 18-19 of transcript of August 9, 2007 hearing.

In *Cortese v. Radian*, Civil Action No. 07-3375 (E.D.Pa. January 30, 2008), Judge McLaughlin stated:

"Bernard Gross has been active in securities litigation for 30 years.  The Court is familiar with the firm and is confident that it is qualified to serve as liaison counsel."

The Firm is a strong supporter of the Philadelphia Museum of Art, having been a corporate sponsor for many years, the Free Library of Philadelphia, the University of Pennsylvania and Central High School, having assisted in raising moneys to build a new library. The Firm has recently donated three Harley Davidson police motorcycles to the City for the Philadelphia Police Highway Patrol.

## PRACTICE AREAS

### SECURITIES FRAUD CLASS ACTION LAWSUITS

The Securities Fraud Class Actions which the Firm prosecutes are designed to recover monies for investors in domestic and foreign publicly traded corporations based primarily on allegations that the corporation, through its officers or directors, disseminated materially false and misleading statements to the investment community concerning the corporation's financial condition or products, services, and business.  The materially false and misleading statements resulted in the artificial inflation of the price of the company's stock or bonds. As a result, investors unwittingly paid too much for their stock or bonds.   Under federal law, the investors are entitled to compensation.  Often these false and misleading statements are disseminated through press releases issued by the company, filings with the SEC, and company annual and quarterly reports.

**AETNA** (E.D. Pa.) – The Firm was co-lead counsel, representing investors who purchased Aetna Inc. common stock between May 6, 1997 through September 29, 1997.  The complaint alleged that defendants, through a series of accounting and actuarial manipulations, falsified Aetna's publicly filed financial statement by reporting materially understated medical expenses and artificially inflated operating earnings.  A settlement was achieved on behalf of the class for $82.5 million.

**ALLEGHENY ENERGY** (D. Md.) – The Firm was co-lead counsel on behalf of a class of investors who purchased Allegheny Energy Securities between April 23, 2001 and October 8, 2002.  The action alleged that defendants concealed a chronic and systematic breakdown of the company's internal accounting controls at Global Energy Markets, the company's newly acquired energy trading subsidiary.  A settlement was achieved for $15.05 million.

**AMF BOWLING** (S.D.N.Y.) -  The Firm was co-lead counsel on behalf of purchasers of AMF common stock in the Initial Public Offering on November 19, 1997 through and including February 26, 1999.  Plaintiffs alleged that the Registration Statement and Prospectus failed to disclose the serious risks posed by the continuing decline in lead participation at AMF Bowling Centers and the risk that AMF reported financial results were not false and misleading.  During the course of the litigation, the company filed for bankruptcy protection.  The case settled for $20 million comprised of two settlements, $12 million from the Investment Bank Defendants and $8 million from the Individual Defendants.

**COREL CORPORATION** (E.D. Pa.) – The Firm was co-lead counsel on behalf of purchasers of Corel common stock between December 7, 1999 and March 20, 2000.  Plaintiffs alleged that defendants did not disclose the truth about the company's business prospects and earnings.  A settlement was achieved for $7 million.

**MOTOROLA** (N.D. Ill.) – The Firm was co-lead counsel on behalf of purchasers of Motorola's common stock from November 4, 1994 to February 17, 1995.  The case concerned allegations that defendants knew but did not disclose material information concerning excess inventory of Motorola cell phones held by Motorola's domestic customers. A settlement was achieved for $25 million.

**RAVISENT TECHNOLOGIES INC.** (E.D. Pa.) – The Firm was co-lead counsel on behalf of purchasers of Ravisent stock between July 15, 1999 and April 27, 2000.  Plaintiffs alleged that Ravisent failed to disclose that the company was recognizing revenue from software licensing agreements in violation of its own internal accounting procedures.  As a result of the improper revenue recognition, plaintiffs alleged that the company's financial statements contained material overstatements of revenue.  A settlement was achieved for $7 million.

**UNIVERSAL ACCESS INC.** (E.D. Tx.) – The Firm was co-lead counsel on behalf of purchasers of Universal Access common stock from May 10, 2001 through March 22, 2002.  Plaintiffs alleged that defendants made misrepresentations about Universal Access' financial statements.  A settlement was achieved for $11 million.

**VERISIGN INC.** (N.D. Cal.) – The Firm represented investors in Verisign Inc. who purchased their stock between January 25, 2001 and April 25, 2002.  Plaintiffs alleged that defendants made false and misleading statements about the company's business and financial results.  A settlement was achieved for $78 million.

## DERIVATIVE LAWSUITS

The Firm also has aggressively pursued cases brought by shareholders on behalf of publicly traded corporations injured by the breach of fiduciary duty or waste of corporate assets by its officers and directors.  As a result, the Firm has successfully implemented remedial recoveries which also improve shareholder value and prevent corporate future mismanagement, including the adoption of corporate therapeutic measures, corporate governance policies and procedures, and the hiring of audit committee consultants to redress alleged inadequacies.

**ABBOTT LABORATORIES** (N.D. Ill.) - The Firm, as co-lead counsel, filed a derivative action against the directors of Abbott for their breach of their fiduciary duties by allowing the Company to violate FDA quality rules dating back to 1993 and resulting in a consent decree that Abbott entered into with the federal government on November 2, 1999, requiring the Company to pay a $100 million fine and make corrective changes at its manufacturing facilities.   A settlement was reached in 2004 which required the Company to implement measures to strengthen the Board of Directors' oversight of regulatory compliance, and to pay $27 million for new compliance and regulatory measures.

**SCHERING-PLOUGH CORP.** (D.N.J.) **-** The Firm, as co-lead counsel, brought litigation against current and former directors alleging that they breached their fiduciary duties with respect to their oversight of Schering's manufacturing and quality control practices, as well as medical marketing and sales practices, certain of which had become issues in two then on-going (and since resolved) investigations by the United States Attorneys' Offices in Boston and Philadelphia. Plaintiffs contended that the alleged wrongdoing in these areas occurred over a period of years, and resulted in financial, operational and reputational damage to the company. A settlement was reached in which the company agreed to change its global compliance and audit functions, fund these changes for five years, enhance communication between the board and management, and change the way board members are elected and paid.

**BOEING COMPANY** (Dela. and Ill. State Court) – The Firm, as co-lead counsel, filed a derivative action against current and former directors for breach of their fiduciary duties of care, good faith and loyalty by failing to take proper steps to prevent or remedy ethical and legal violations by the company and its employees, thereby exposing the company to substantial fines, liabilities, loss of contracts and other business. A settlement was reached which provided for the adoption and implementation of significant corporate governance and compliance measures and the commitment of substantial treasury funds, in the amount of $29 million above 2004 expenditures, to implement and support those governance and compliance measures and to fund further enhancements to Boeing's ethics and compliance program.

## ERISA LAWSUITS

Law Offices Bernard M. Gross, P.C., litigates claims on behalf of employees and/or retirees alleging interference with their interests under the Federal Employee Retirement Income Security Act (ERISA). Among its provisions, ERISA recognizes that the pension and 401(K) plan trustees owe fiduciary duties to the participants and beneficiaries in these plans. This duty is sometimes breached, particularly where a company deems investment in its own equities appropriate, despite having access to information that clearly indicates otherwise. This conflict of interest and the resultant losses can be devastating to employees who often depend on their 401(K) accounts as a principal source of retirement income.

**CVS CORPORATION** (D. Mass.) - The Firm, as co-lead counsel, represented all persons who were participants or beneficiaries in the CVS 401(K) Profit Sharing Plan (the "401(K) Plan), the CVS Corp. and Subsidiaries Employee Stock Ownership Plan (the "CVS ESOP"), and who held, acquired, purchased or had contributed common stock and/or CVS preference stock (collectively "CVS stock") to his or her account in either plan at any time from December 1, 2000 to October 31, 2001 (the "Class Period"). A settlement was achieved for $3 million.

**NUI CORPORATION** (D.N.J.) – The Firm, as co-lead counsel, represented individuals who were participants or beneficiaries of the (i) NUI Corp. Savings and Investment Plan and/or (ii) NUI Corp. Savings and Investment Plan for Collective Bargaining Employees during any portion of November 8, 2001 through and including September 26, 2003. A settlement was achieved for $850,000.00.

## ANTITRUST CLASS ACTION LAWSUITS

The Antitrust Practice of the Firm focuses primarily on the representation of plaintiffs who have been the victims of price fixing, unfair trade practices, or other anti-competitive conduct. The firm has taken a leading role in many of the largest price fixing and price discrimination cases throughout the United States, which have, after either trials or settlements, led to recovery for the injured parties, of hundreds of millions of dollars.

**AUTO PAINT REFINISHING** (E.D.Pa.) – The Firm served as co-lead counsel for the class in an antitrust action on behalf of direct purchasers of automotive refinishing paint from defendants during the period January 1, 1993 to December 31, 2000. Defendants included PPG Industries, E.I. DuPont de Numours, Sherwin-Williams, BASF and Akzo Nobel Coatings. . A settlement has been reached with all defendants totaling $106 million. This was the largest private antitrust settlement ever achieved in which the federal government empanelled a grand jury and, eventually, closed the investigation without bringing any charges brought against any of the paint manufacturers

**CARBON BRUSHES** (N.D.J.) – The Firm served as co-lead counsel for the class in an antitrust action that accused a group of manufacturers of electrical carbon products of engaging in a decade long conspiracy to fix prices. Defendants included Morgan Crucible, Carbone of America Industries, Schunk GmBH and SGL Carbon. A settlement was reached for $21.9 million.

**FLAT GLASS** - (M.D.L. 1200) (W.D. Pa.) - Horizontal price fixing. This was an antitrust action brought on behalf of purchasers of flat glass products alleging that the principal manufacturers of such products colluded to fix prices at artificially inflated levels. Settlements were reached with four of the five defendants totaling over $60 million.

**MEDICAL X-RAY FILM** (E.D.N.Y.) – The Firm was co-lead for the class of purchasers from the manufacturers of x-ray film and recovered $24 million on behalf of the class by settlement.

**OLIN SKI LITIGATION** (E.D. Pa.) – The Firm was co-lead counsel alleging price fixing by Olin Ski Company and its distributors in the United States. The case was tried and the jury returned a verdict in favor of the class. This was the first time that a class action vertical price fixing case was successfully tried before a jury. The case was eventually settled for more than $7 million.

## EMPLOYEE WAGE CLAIM CLASS ACTION LAWSUITS

Overtime lawsuits can be pursued by workers who have been denied overtime wages in direct violation of the U.S. Fair Labor Standards Act of 1938.  The act is a federal law which governs not only pay practices, but also the minimum wage and child labor practices.

## UNFAIR MERGERS

Takeover proposals are often approved by board of directors without the board properly shopping these proposals for the best price or providing shareholders with adequate information to make an informed decision.

**NETSMART** - Recently, the Firm on behalf of shareholders of Netsmart achieved a noted victory where the board only looked at private equity buyers and refused to look at strategic buyers.  The court imposed a temporary injunction on the Merger until the proxy materials were amended to include further information on the expected future cash flow projections, as well a "fuller, more balanced" description of the Board's actions in canvassing potential strategic buyers.

## CONSUMER FRAUD LAWSUITS

Consumer fraud describes a wide range of improper practices that may involve advertising, marketing and/or the sale of goods or services.  Consumer fraud class actions are initiated, for example when a company overcharges or improperly charges consumers for goods and services, or runs deceptive or misleading ads for its products.  Companies also commit consumer fraud when they interpret a contract or agreement in a manner that unfairly disadvantages consumers.  The Firm specializes in litigation on behalf of consumers.  These types of class actions have resulted in significant monetary recoveries for consumers and changes in corporate policies on a class-wide basis.

**BERKHEIMER** (Ct. of Common Pleas, Pa.) **-**  The Firm, as lead counsel, represented all Pennsylvania taxpayers who paid costs to Berkheimer in connection with the collection of delinquent local Earned Income Taxes ("EIT") for tax years 1995 through 2001.  Te court approved the settlement of the action for total consideration of $2 million.

## ATTORNEYS

**BERNARD M. GROSS** is a graduate of Central High School of Philadelphia (B.A. 1952), the University of Pennsylvania Wharton School (B.S. 1956), and the University of Pennsylvania School of Law (L.L.B. 1959).  He founded the Law Offices Bernard M. Gross, P.C., over forty years ago.  He is a former Assistant City Solicitor in charge of bonds and contracts for the City of Philadelphia (1961-64).  He was a member of the Pennsylvania General Assembly from 1967-70.   He is admitted to practice before the United States Supreme Court, United States Court of Appeals for the Third Circuit and the United States District Court for the Eastern District of Pennsylvania and the Supreme Court of Pennsylvania.

Bernard M. Gross has been an active member of The American Association for Justice since 1960.  In 1990, he received the "Stalwart" award from The Association of Trial Lawyers of America.  Mr. Gross was a member of the House of Delegates of the Pennsylvania Bar Association (1988-93).   He is a former member of the Board of Governors of the Pennsylvania Association for Justice and currently a member of the Legislative Policy Committee of the Pennsylvania Association for Justice.  Mr. Gross was a member of the Board of Governors of the Philadelphia Bar Association, a past President of the Philadelphia Trial Lawyers Association, past Chairman of the Philadelphia Bar Association Committee on Judicial Compensation and former Chairman of its Civil Legislative Committee.  He is formerly Chancellor of the Tau Epsilon Rho Law Fraternity Philadelphia Graduate Chapter.

Mr. Gross has lectured on behalf of the Philadelphia Trial Lawyers Association and the Pennsylvania Trial Lawyers Association.  He has participated in many complex federal and class actions, including antitrust, consumer fraud and corporate securities litigation.

**DEBORAH R. GROSS** is a graduate of the University of Pennsylvania Wharton School (B.S. 1982) and Boston University School of Law (J.D. 1985).  She is a graduate of the Cheltenham High School.  She is admitted to practice before the Supreme Court of Pennsylvania, the Supreme Court of Massachusetts, the United States District Courts for the Eastern District of Pennsylvania, for the District of Massachusetts, and for the District of Colorado, the United States Court of Appeals for the Third Circuit and for the Tenth Circuit, and the United States Supreme Court.

Since 1998, Ms. Gross has been a lecturer in the Federal Securities Law at the PBI Annual Federal Securities Law Forum. She has also taught various Continuing Legal Education seminars including Oral Advocacy in the Federal Courts, Changes to Rule 23 of the Federal Rules of Civil Procedure, Attorney's Fees in Class Actions and current topics in the securities laws.  In 2002, Ms. Gross was a guest panelist at the University Of Chicago Graduate School Of Business, 50th Annual Management Conference.  She spoke on the topic of "Accounting in Crisis - Who Watches the Watchdogs?"  In 2003, Ms. Gross also spoke at The Directors' Conference, a three-day intensive program for directors and senior executives to explore the fundamentals of corporate governance and board service offered by the University Of Chicago Graduate School Of Business, Stanford Law School and the Wharton School of the University of Pennsylvania. She discussed the legal issues surrounding audit committee qualifications, responsibility and content.  She spoke at the 2006 ABA Section of Business Law Annual Meeting on Controlling Restatement Chaos.  Ms. Gross was on the Attorney Advisory Committee to the Pennsylvania Securities Commission in 2006 and 2007.

Ms. Gross was chair of the Federal Courts Committee of the Philadelphia Bar Association and was responsible for organizing the June 1998 Bench Bar Conference of the Philadelphia Bar Association. She was a member of the Third Circuit Judicial Council Bench Bar Relations Committee.   She is a member of the Philadelphia Federal Court Historical Society and chaired the annual dinner where Justice Scirica spoke.  She was on the Friends Committee for the 29th Annual Conference of the National Association of Women Judges.

For the past four years, Ms. Gross has been a trustee of the Philadelphia Bar Foundation, the Charitable Arm of the Philadelphia Bar Association.  The Foundation's mission is to promote access to justice for all people in the community, particularly those struggling with poverty, abuse and discrimination.  The Foundation provides funding to over 30 grantee organizations. She is responsible for the establishment of the cy pres committee of the Foundation which requests courts to award the residual moneys from class action lawsuits.  She also assisted in the reinvigoration of the Andrew Hamilton Gala co-chairing for the past two years the premier event of the Philadelphia Legal Community which raises moneys for the Foundation.

Ms. Gross is involved in many other nonprofit and educational organizations including Temple Adath Israel where she is a member of the Executive Committee, First Vice President. Previously, she was Vice President of Education, responsible for education at the preschool and religious school.  She has also been heard of the education committees of the religious school and preschool as well as a member of the Board of Directors.  Her children attend the William Penn Charter School where she is a class parent.  She has also organized a program to bring the third and eighth grade students from William Penn Charter to the federal courthouse to observe a naturalization ceremony.  She co-chaired and raised moneys for the University of Pennsylvania Class of 1982 25th year reunion which had a record number of attendees and raised a record number of donations.  She has supported numerous charitable organizations including Hazon, Jaffa Institute.  She participated in the first Three Day Walk in Philadelphia to raise moneys for breast cancer.

**ROBERT P. FRUTKIN** is a 1971 graduate of the University of Rochester and a 1975 *cum laude* graduate of the School of Law of Temple University, where he was a member of the Staff of the Temple Law Quarterly.  Mr. Frutkin is admitted to practice before the Supreme Court of Pennsylvania, the United States Court of Appeals for the Third, Fourth, Seventh, Eighth, Ninth and Eleventh Circuits, and the United States District Court for the Eastern District of Pennsylvania.  Prior to this becoming Of Counsel to the Firm, Mr. Frutkin formed his own firm of Savett Frutkin Podell & Ryan.  Prior to the formation of his firm on October 1, 1991, Mr. Frutkin had been a shareholder of Berger & Montague, P.C., in Philadelphia.  Mr. Frutkin worked in the Peace Corps.

In *In re U.S. Bioscience Securities Litigation*, 92-CV-678 (E.D. Pa.) (April 14, 1994 Hearing Transcript at pp. 38-39), the Court commented favorably on Mr. Frutkin's performance as co-lead counsel:

> Since I've been down here, the quality of lawyering on both sides, but I'm going to stress now on the plaintiffs' side, simply has not been exceeded in any case and we've had some marvelous counsel appear before us and make superb arguments, but they really don't come any better than...Mr. Frutkin, and the argument we had on the Motion to Dismiss, for example, Motions to Dismiss, both sides were fabulous, but plaintiffs' counsel were as good as they come.

Mr. Frutkin successfully argued before the 7th Circuit Court of Appeals the landmark decision in *In re Abbott Laboratories Deriv. Litig.*, 325 F.3d 795 (7th Cir. 2003), as well as before Delaware Chancery Court, the landmark decision in *In re Netsmart Technologies Inc. Shs.*

*Litig.*, where the Court faulted Netsmart for excluding strategic buyers from its sales process and ordered the company to delay a vote on a proposed acquisition.

**SUSAN R. GROSS** is a graduate of Hofstra University in Hempstead, New York (B.A. 1985) and Suffolk University School of Law (J.D. 1989).  She graduated from Cheltenham High School.  She is admitted to practice before the Supreme Court of Pennsylvania, the Supreme Court of Florida, the United States District Court for the Eastern District of Pennsylvania and the United States Court of Appeals for the Third Circuit.  She is a member of the Philadelphia Bar Association and Pennsylvania Association for Justice.  Ms. Gross also sits as an arbitrator for the Court of Common Pleas, Philadelphia County, First Judicial District.

Besides her involvement in the law and legal community, Ms. Gross is active at the William Penn Charter School in East Falls, Pennsylvania as a class parent.  She was formerly Co-Chair of the Temple Adath Israel Parent Teacher Association for three years.  Ms. Gross is also an active supporter of the Cystic Fibrosis Foundation, Angelman Syndrome Foundation, Susan B. Komen Breast Cancer Foundation and the Career Wardrobe, a non-profit organization that provides free professional clothing and educational opportunities to women in the Philadelphia region.

She concentrates her practice in securities fraud litigation.  Ms. Gross serves in the Firm's lead plaintiff department which involves working with clients, litigation strategy and lead plaintiff issues, as well as in the shareholder relations department.

**TINA MOUKOULIS** is a graduate of Ursinus College (B.A. 1993) and Pennsylvania State University at the Dickinson School of Law (J.D. 1998).  During law school, Ms. Moukoulis was a member of the *Dickinson Law Review* and served as a Student Attorney representing indigent clients in domestic matters through the Dickinson Family Law Clinic.  Ms. Moukoulis also served as a judicial intern in the Superior Court of Pennsylvania (1996).  Since joining the Firm in 1998, she concentrates her practice in the area of antitrust and securities fraud litigation.

Ms. Moukoulis is admitted to practice in the Supreme Court of Pennsylvania, theSupreme Court of New Jersey, The United States District Courts for the Eastern District of Pennsylvania and the District of New Jersey , and the United States Court of Appeals for the Third Circuit Court, and is a member of the Pennsylvania Bar Association.

In addition to being an active steward of her parish, Ms. Moukoulis also supports events and organizations focused on promoting medical research for breast cancer as well as the education and social awareness of breast cancer issues.  She also supports The Career Wardrobe, a nonprofit organization that provides free professional clothing and educational opportunities to women in the Philadelphia region.