# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **STEAMFITTERS LOCAL 449 PENSION FUND, Individually and on Behalf of All Others Similarly Situated,** | ) ) ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 2:09-CV-04730-CMR** |
| **vs.** | ) | |
| | ) | |
| **DENNIS ALTER, WILLIAM A. ROSOFF, PHILIP M. BROWNE, CHRISTOPHER J. CARROLL, DAVID B. WEINSTOCK, JOHN F. MOORE, ROBERT S. BLACK, MAX BOTEL, THOMAS P. COSTELLO, DANA BECKER DUNN, RONALD LUBNER, OLAF OLAFSSON AND MICHAEL A. STOLPER,** | ) ) ) ) ) ) ) ) ) | **CLASS ACTION** |
| | ) | |
| **Defendants.** | ) | |

## PROPOSED ORDER

On this _____ day of _____, 2010, after having considered Defendant Christopher J. Carroll's Motion to Dismiss the Amended Complaint for Violation of the Federal Securities Laws, any responses thereto, and any pleadings or arguments of counsel, the Court finds the following:

It is ORDERED that the Motion be GRANTED.

The above-captioned matter against Defendant Carroll is hereby DISMISSED WITH PREJUDICE.

_____
The Honorable Cynthia M. Rufe
United States District Judge

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **STEAMFITTERS LOCAL 449 PENSION FUND, Individually and on Behalf of All Others Similarly Situated,** | ) ) ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 2:09-CV-04730-CMR** |
| **vs.** | ) | |
| | ) | |
| **DENNIS ALTER, WILLIAM A. ROSOFF, PHILIP M. BROWNE, CHRISTOPHER J. CARROLL, DAVID B. WEINSTOCK, JOHN F. MOORE, ROBERT S. BLACK, MAX BOTEL, THOMAS P. COSTELLO, DANA BECKER DUNN, RONALD LUBNER, OLAF OLAFSSON AND MICHAEL A. STOLPER,** | ) ) ) ) ) ) ) ) ) | **CLASS ACTION** |
| | ) | |
| **Defendants.** | ) | |

**MOTION OF DEFENDANT CHRISTOPHER J. CARROLL**
**TO DISMISS THE AMENDED COMPLAINT**

Defendant Christopher J. Carroll, pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, moves to dismiss Plaintiff's Amended Complaint with prejudice.  As explained in Defendant Carroll's Memorandum of Law and the Memorandum in Support of Defendants' Motion to Dismiss, which are incorporated by reference, the Amended Complaint against Defendant Carroll should be dismissed because:

1.      Plaintiff's claim in Count II for violation of Section 20(a) of the Securities Exchange Act of 1934 (control person liability) against Carroll

(a)      Fails to plead facts showing Carroll's control of the company and his culpability (that is, intentional participation) in the alleged fraud.

(b)      Is barred by the two-year statute of limitation.

      2.      Plaintiff's claim in Count III for violation of §20(A) of the Securities Exchange Act (insider trading liability) against Carroll

     (a)     Fails to plead an underlying violation of §10(b).

     (b)     Fails to allege facts showing Carroll's knowledge or reckless disregard of material undisclosed facts, the commission of a predicate act, and indicia of suspicious trading.

     (c)     Is not plausible.

     (d)     Lead Plaintiff has not alleged that it made its stock purchases on the same day(s) that Carroll sold stock.

For these reasons, the Court should dismiss the Amended Complaint in its entirety against Defendant Carroll with prejudice.

                Respectfully submitted,

                /s/ David W. Engstrom
                David W. Engstrom (76178)
                HARKINS CUNNINGHAM LLP
                2800 One Commerce Square
                2005 Market Street
                Philadelphia, PA 19103
                Tel:  (215) 851-6700
                Fax: (215) 851-6710

                Thomas R. Ajamie
                Ann Ryan Robertson
                Wallace A. Showman
                AJAMIE LLP
                Pennzoil Place – South Tower
                711 Louisiana Street, Suite 2150
                Houston, Texas 77002
                Tel:  (713) 860-1600
                Fax: (713) 860-1699

                ATTORNEYS FOR DEFENDANT
Dated: October 18, 2010      CHRISTOPHER J. CARROLL

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

STEAMFITTERS LOCAL 449 PENSION )
FUND, Individually and on Behalf of All )
Others Similarly Situated, )
       )
     Plaintiff, )
       )    Civil Action No. 2:09-CV-04730-CMR
vs. )
       )
DENNIS ALTER, WILLIAM A. ROSOFF, )
PHILIP M. BROWNE, CHRISTOPHER J. )    __CLASS ACTION__
CARROLL, DAVID B. WEINSTOCK, )
JOHN F. MOORE, ROBERT S. BLACK, )
MAX BOTEL, THOMAS P. COSTELLO, )
DANA BECKER DUNN, RONALD )
LUBNER, OLAF OLAFSSON AND )
MICHAEL A. STOLPER, )
       )
     Defendants. )

## DEFENDANT CHRISTOPHER J. CARROLL'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT

David W. Engstrom (76178)
HARKINS CUNNINGHAM LLP
2800 One Commerce Square
2005 Market Street
Philadelphia, PA 19103
Tel:  (215) 851-6700
Fax: (215) 851-6710

Thomas R. Ajamie
Ann Ryan Robertson
Wallace A. Showman
AJAMIE LLP
Pennzoil Place – South Tower
711 Louisiana Street, Suite 2150
Houston, Texas 77002
Tel:  (713) 860-1600
Fax: (713) 860-1699

ATTORNEYS FOR DEFENDANT
Dated: October 18, 2010    CHRISTOPHER J. CARROLL

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION ...................................................1

PRELIMINARY STATEMENT ...................................1

SUMMARY OF ALLEGED FACTS REGARDING CARROLL..........................3

    A.    The Alleged Fraudulent Practices ...........................3

    B.    Carroll's Alleged Knowledge of the Delinquency Issue .......................3

    C.    Count II Against Carroll for Control-Person Liability .........................6

    D.    Count III Against Carroll for Insider Trading........................6

ARGUMENT ...................................................7

Counts II and III Must be Dismissed as to Carroll ..................................7

    I.    STANDARDS FOR REVIEWING THIS MOTION ...........................7

    II.    COUNT II MUST BE DISMISSED AS TO CARROLL.....................9

        A.  Count II is Time-Barred....................................9

        B.  Count II Constitutes Impermissible Group Pleading ......................10

        C.  There are No Specific Allegations Showing Carroll's Control .......11

        D.  There are No Specific Allegations Showing Carroll's Culpable Participation.....................................12

    III.    COUNT III, THE INSIDER TRADING CLAIM, MUST BE DISMISSED AS TO CARROLL .......................................13

        A.  Carroll's Sales are Not Contemporaneous with Plaintiff's Purchases ................................13

        B.  No Predicate Act by Carroll is Alleged ........................14

        C.  The Materiality of the Delinquency Issue is Not Specifically Alleged ...........................15

        D.  The Insider Selling Claim Against Carroll is Not Plausible............17

        E.  Carroll's Class Period Selling is Not Suspicious or Unusual .........17

CONCLUSION.....................................................19

## TABLE OF AUTHORITIES

**CASES**                                                                 **PAGE**

*Allen v. AMTRAK*, 2004 U.S. Dist. LEXIS 24846 (E.D. Pa. Dec. 7, 2004) ........................... 10

*Arthur v. Maersk, Inc.*, 434 F.3d 196 (3d Cir. 2006) ............................................................... 9

*Ashcroft v. Iqbal,* 129 S.Ct. 1937 (2009) ................................................................ 8, 11, 12, 13

*Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007) .................................... 8, 11, 12, 13, 17

*Belmont v. MB Investment Partners, Inc.*, Civil Action No. 09-4951, 2010 WL
        2348703 (E.D. Pa. June 10, 2010) ............................................................................... 13

*Building Trades United Pension Trust Fund v. Kenexa Corp.*, No. 09-2642,
        2010 WL 3749459 (E.D. Pa. Sept. 27, 2010) ............................................................ 18

*Cal. Pub. Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126 (3d Cir. 2004) ..................... 15

*Copland v. Grumet,* 88 F. Supp. 2d 326 (D.N.J. 1999) ........................................................... 14

*Copland v. Grumet*, No. 96-3351 MLP, 1998 WL 256654 (D.N.J. Jan. 9,
        1998) ............................................................................................................................. 11

*Fowler v. UPMC Shadyside,* 578 F.3d 203 (3d Cir. 2009) .................................... 8, 11, 12, 13

*In re Able Laboratories Sec. Litig*.,  No. 05-2681 (JAG), 2008 WL 1967509
        (D.N.J. March 24, 2008) .............................................................................................. 13

*In re Adolor Corp. Sec. Litig.*, 616 F. Supp. 2d 551 (E.D. Pa. 2009) .................................... 18

*In re Advanta Corp. Sec. Litig*., 180 F.3d 525 (3d Cir. 1999) ............................. 13, 14, 17, 18

*In re Aldus Sec. Lit.*, No. 92-885C, 1993 WL 121478 (W.D. Wash. 1993) .......................... 14

*In re American Business Fin. Servs.*, No. 05-252, 2007 WL 81937 (E.D. Pa.
        Jan. 9, 2007) ........................................................................................................... 12, 16

*In re AST Research Sec. Litig.,* 887 F. Supp. 231 (C.D. Cal. 1995) ...................................... 14

*In re Astea Intern. Inc. Sec. Litig.,* No. 06-1467, 2007 WL 2306586 (E.D. Pa.
        Aug. 9, 2007) ............................................................................................................... 19

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3d Cir. 1997) ....................... 15, 17

*In re Cendant Corp. Sec. Litig.*, 76 F. Supp. 2d 539 (D.N.J. 1999)................................. 11, 12

*In re Digital Island Sec. Litig.*, 223 F. Supp. 2d 546 (D. Del. 2002), *aff'd* 357 F.3d 322 (3d Cir. 2004)................................................................................ 10, 11, 12

*In re Equimed, Inc.*, No. 98-CV-5374 NS, 2000 WL 562909 (E.D. Pa. May 9, 2000) .............................................................................................................. 11, 12

*In re Gildan Activewear, Inc.*, 636 F. Supp. 2d 261 (S.D.N.Y. 2009)..................................... 18

*In re Initial Public Offering Sec. Litig.*, 241 F. Supp. 2d 281 (S.D.N.Y. 2003)..................... 10

*In re Merck & Co., Inc. Vytorin/Zetia Sec. Litig.*, No. 08-CV-2177 (DMC), 2009 WL 2855601 (D.N.J. Sept. 2, 2009) ........................................................... 13, 14

*In re Merck Co., Inc. Sec. Litig.*, 432 F.3d 61 (3d Cir. 2005)................................................. 15

*In re MicroStrategy, Inc.*, 115 F. Supp. 2d 620 (E.D. Va. 2000)........................................... 14

*In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314 (3d Cir. 2002) ................................................. 18

*In re NutriSystem, Inc. Deriv. Litig.*, 666 F. Supp. 2d 501 (E.D. Pa. 2009) ......................... 19

*In re Ravisent Techs., Inc. Sec. Litig.*, Civ. A. No. 00-1014, 2004 WL 1563024 (E.D. Pa. July 13, 2004) ............................................................................ 12

*In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280 (3d Cir. 1999)........................... 16

*In re Seagate Technology II Sec. Litig.*, Fed.Sec.L.Rep. ¶ 95, 427, 1990 WL 134963 (N.D.Cal.1990)................................................................................... 14

*In re Synchronoss Sec. Litig.*, 705 F. Supp. 2d 367 (D.N.J. 2010) .................................. 16, 18

*In re Tel-Save Sec. Litig.*, No. 98-CV-3145, 1999 WL 999427 (E.D. Pa. Oct. 19, 1999) ....................................................................................................... 12

*In re U.S. Interactive, Inc.*, No. CV 522, 2002 WL 1971252 (E.D. Pa. Aug. 23, 2002) ....................................................................................................... 12

*In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079 (9th Cir. 2002) ............................................. 19

*In re VeriFone Sec. Litig.*, 784 F. Supp. 1471 (N.D. Cal. 1992) ........................................... 14

*Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co.,* 32 F.3d 697 (2d Cir. 1994).................. 14

*La Mar v. H & B Novelty and Loan Co.,* 489 F.2d 461 (9th Cir. 1973) ................................. 14

*Neubronner v. Milken,* 6 F.3d 666 (9th Cir. 1993) ................................................................ 14

*Rochez Bros., Inc. v. Rhoades*, 527 F.2d 880 (3d Cir. 1975)............................................... 9, 12

*Snowstorm Acquisition Corp. v. Tecumseh Products Co.*, No. 09-866-SLR,
    2010 WL 3735383 (D. Del. Sept. 21, 2010) .................................................... 10, 11, 12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S.Ct. 2499 (2007) ................................ 8, 17

*TSC Industries, Inc. v. Northway, Inc.*, 98 S.Ct. 2126 (1976) ................................. 15

*Wilson v. Comtech Telecommunications Corp.,* 648 F.2d 88 (2d Cir. 1981) ........................ 14

*Winer Family Trust v. Queen*, 503 F.3d 319 (3d Cir. 2007) .................................... 10

*WM High Yield Fund v. O'Hanlon*, Civ. A. No. 04-3423, 2005 WL 1017811
    (E.D. Pa. Apr. 29, 2005) ......................................................................... 12

## STATUTES                                                   PAGE

15 U.S.C. § 78t(a) ............................................................................................. 9

15 U.S.C. § 78t-1(a) ......................................................................................... 13

15 U.S.C. § 78u-4(b) ........................................................................................ 10

15 U.S.C. § 78u-4(b)(2) ............................................................................. 7, 8, 10

28 U.S.C. § 1658(b)(1) ...................................................................................... 9

Fed. R. Civ. P. 8(a) .................................................................................. 7, 8, 11

Fed. R. Civ. P. 9(b) ...................................................................................... 7, 8

## INTRODUCTION

Defendant Christopher J. Carroll ("Carroll") joins in Defendants' Motion to Dismiss the Amended Complaint for Violation of the Federal Securities Laws, and he adopts and incorporates herein the Memorandum in support thereof ("Defendants' Main Brief").  Carroll also incorporates, where noted herein, certain portions of the Memorandum in Support of the Motion of the Outside Director Defendants to Dismiss the Amended Complaint ("Director Defendants' Memorandum").  Carroll separately files this Memorandum of Law, which sets forth independent reasons to dismiss the Amended Complaint ("Complaint") as to him.  Carroll respectfully requests oral argument pursuant to Local Rule of Civil Procedure 7.1(f).

## PRELIMINARY STATEMENT

Carroll is one of thirteen defendants named in the Complaint.  Eleven defendants are accused of participating in a fraudulent scheme, consisting of a series of public misstatements regarding Advanta Corp.'s ("Advanta" or "Company") financial performance and prospects, that caused Lead Plaintiff Western Pennsylvania Electrical Employees Pension Fund ("Lead Plaintiff") and other investors to lose money.

The Complaint does not include Carroll among those eleven defendants.  It does not accuse Carroll of making any misstatements or of signing any SEC filings.  It does not name Carroll in Count I for misstatements in violation of Rule 10b-5.  Instead, Carroll is named as a defendant only in Count II (control-person liability) and Count III (insider trading).

In Count II, Plaintiff seeks to impose joint and several liability on Carroll for every alleged misstatement uttered or signed by other defendants, by means of the "control-person" liability provision in Section 20(a) of the Exchange Act.  This Count must be dismissed as to Carroll because it is time-barred by the Exchange Act's two-year statute of limitations.

On the merits, Lead Plaintiff alleges that all the defendants as a group: (1) had the "power and authority" to cause Advanta to commit the frauds; and (2) "had access" to the undisclosed information.  By the use of this group pleading, Lead Plaintiff hopes to make Carroll liable for alleged misstatements he had no hand in making.

 The Complaint has no specifics of Carroll's "power and authority."  Of four alleged varieties of fraudulent practices, Carroll is specifically alleged to have known about one, and the alleged facts provide no basis for the materiality of that one alleged fraud.  The Complaint does not allege a single act taken by Carroll in furtherance of the fraudulent scheme.  To the contrary, the facts indicate that Carroll's intent was to prevent fraud because, as the Complaint alleges, he instigated two audits and a government investigation of the behavior of which he was aware. The alleged facts also indicate that Carroll could not have controlled the alleged misstatements because they were made by his supervisors.

Section 20(a) was not intended to allow overreaching plaintiffs to drag in defendants who, like Carroll, are not allegedly involved in the alleged fraud and who do not control their companies' public statements.  Count II must therefore be dismissed as to Carroll.

Count III, insider trading in violation of Section 20A of the Act, must be dismissed because neither Lead Plaintiff nor the named plaintiff purchased contemporaneously with Carroll's sales – an essential element of the claim.

On the merits, Lead Plaintiff's use of the insider trading provision is also improper. Here, the Complaint redefines the Class Period to begin with Carroll's first sale of Advanta shares, again throws in statutory boilerplate that Carroll "had access" to all material information, and concludes that therefore Carroll knew everything alleged in the Complaint.

Again, however, the Complaint fails to allege a predicate act by Carroll, as the statute requires.  Not a single specific factual allegation indicates that Carroll had any knowledge of any

undisclosed material fact.  His selling was consistent with his selling before the Class Period and is in line with his normal compensation, so it does not indicate fraudulent intent.  Moreover, the claim is implausible: Carroll is alleged to have fraudulently sold his stock at the very time he was instigating two audits and a government investigation of the one issue of which he allegedly knew.  Count III must therefore be dismissed as to Carroll.

## SUMMARY OF ALLEGED FACTS REGARDING CARROLL[1]

### A.      The Alleged Fraudulent Practices

Paragraph 126 lists the following categories of alleged fraudulent practices violating GAAP:

- falsifying accounts receivables records by improperly recording many customers' accounts as paid, when in fact, they continued to be delinquent (¶¶ 126(a), 126(b), 127-133) (the "Delinquency Issue");

- failing to adequately consider the adverse impact of the Company's improper interest rate re-pricing policies on delinquencies (¶¶ 126(c), 134-137) (the "Re-pricing Issue"); and

- failing to adequately consider the impact of the deterioration in the FICO scores of the Company's customer base, or credit delinquencies (*see* ¶¶ 126(d), 138-141) (the "FICO Issue").

In addition, the Complaint alleges fraudulent statements regarding the credit quality of its new customers (the "Credit-quality Issue").  ¶¶ 2, 3, 13-16, 20, 26, 32, 34, 57, 58, 60, 61, 64, 66, 68, 72, 74, 76, 78, 80, 81, 84, 86, 87, 90, 95, 98, 100-104, 106-111.

### B.      Carroll's Alleged Knowledge of the Delinquency Issue

Carroll allegedly knew only about the Delinquency Issue.  He is not mentioned in connection with the other issues.  *See, e.g.,* ¶¶ 134-137 (describing the Re-pricing Issue), 138-

---

[1]   The facts set forth in this section are those alleged in the Complaint.  Carroll does not represent herein that any of these alleged facts are actually true, except as specifically noted.  Paragraph numbers refer to the Complaint.

141 (FICO Issue), and the paragraphs listed above regarding the Credit-quality Issue.  Nor do any of the paragraphs setting forth allegedly false public statements mention Carroll.

Carroll was the chief credit officer for the Company and Advanta Bank Corp. until he left the Company on November 29, 2007.  ¶ 45.  The collections department was allegedly manipulating the system in order to get increased bonuses and was "masking" true delinquency rates in the process.  ¶¶ 22, 127-134.  The Company kept its credit-card receivables in various delinquency "buckets" of 30-60 days overdue, 60-90 days overdue, and so on, up to 180 days overdue.  When the 180-day mark was reached, the account was supposed to be charged-off.  The collections department allegedly improperly maintained balances that were more than 180 days delinquent in earlier "buckets" in order to avoid writing them off.  ¶¶ 127-128.  It did so by: (a) accepting promises to pay in lieu of payment for purposes of aging receivables; (b) improperly transferring payments from borrowers' bank accounts, which payments were later nullified; and (c) simply not charging-off accounts more than 180 days delinquent.  ¶ 130.

Carroll caused an internal audit of the Delinquency Issue in 2005.  The audit report found faulty oversight and an incentive program that encouraged the bad practices, and it recommended changes to both oversight and incentives.  According to the Complaint, the Company resisted the recommendations.  ¶¶ 23-24, 62, 129, 172.  In fact, however, the report made no findings of any material misstatements of Advanta's financial results, and the Company stated that it would follow the recommendations.  *See* Exhibit A (October 17, 2005 Audit Report).[2]

Carroll instigated a second inquiry in November 2006, which resulted in a second, "full-blown" audit confirming the earlier findings, and the Company again responded inadequately, according to the Complaint.  ¶¶ 25, 63, 69, 70, 84, 90, 91, 98, 100, 108, 129, 159, 179.  In fact, the second report found that only two employees were engaged in improper collections practices,

---

[2]   The Court may review Exhibits A and B because they are referenced in the Complaint.  *See infra* at p. 16, fn. 11.

and it concluded that the "temporary impact on the timing of reported chargeoffs was immaterial for financial reporting purposes**.**"  The Company responded positively to the recommendations and dismissed the two employees.  *See* Exhibit B (July 16, 2007 Audit Report).

In October and November 2006, Carroll sold a portion of his Advanta stock.  ¶¶ 13, 25, 45, 56, 63, 70, 158.  Carroll alerted the FDIC in early 2007, and the FDIC launched its own investigation, which caused a "firestorm" at the Company.  ¶¶ 27, 28, 59, 91, 98, 159, 172, 179.  Thus, according to the Complaint, while Carroll was fraudulently selling stock, he was launching audits of the Delinquency Issue and reporting it to the government -- a "remarkable act of self-preservation," as the Complaint puts it.  ¶¶ 28, 91.

The Company's announcements beginning on October 25, 2007 disclosed that Advanta was reporting earnings below estimates due to increased reserves and charges, which were in turn due to the deterioration of the credit quality of Advanta's portfolio as delinquencies and charge-offs increased.  The announcements were accompanied by a number of stock price drops. ¶¶ 100-116.

The Complaint does not allege: (1) any specific amount or degree by which the delinquency rates were made to appear better than they actually were; (2) any specific inflation of the Company's financial results due to the masked delinquency rates; (3) any correction or restatement of the delinquency rates or of any reported earnings; (4) any specific material connection between the Delinquency Issue and the increase in delinquencies and write-offs beginning in October 2007; or (5) any finding or penalty resulting from the FDIC investigation of the collections department practices.[3]

---

[3]  One might expect that an investigation causing a "firestorm" at the Company, ¶¶ 27, 98, would result in some negative action by the FDIC, but none is alleged.  The Complaint does allege an FDIC finding and penalty with respect to the Re-pricing Issue, but this report was issued in 2009, more than two years after the end of the Class Period, and it found fault with Advanta's practices during June 1, 2007 through 2008.  Further, that FDIC finding does not concern the Delinquency Issue.  ¶ 118.

The only allegation with respect to any link between the Delinquency Issue and the business reverses suffered by Advanta in the last three months of the Class Period (October 2006 – January 2007) is that "Advanta was left with a book of business that was deteriorating due to increasing delinquencies and charge-offs. And this effect was aggravated after the Company could no longer mask delinquencies with improper Collections department practices." ¶ 108. There is no quantification of the degree to which "this effect was aggravated."

C. **Count II Against Carroll for Control-Person Liability**

Count II, naming Carroll among the thirteen defendants liable as control-persons, contains only the conclusory allegation that "Defendants had the power and authority to cause Advanta to engage in the wrongful conduct complained of herein." ¶ 208. Elsewhere, the Complaint contains only the conclusory allegation that the entire group of thirteen defendants "possessed the power and authority to control the contents" of Advanta's public statements to the market, that they were provided with copies of such statements prior to their release and had the power to prevent their issuance or cause them to be corrected, and that "because of their positions with the Company" and their "access to material non-public information," they knew that the Company's public statements were materially false and misleading. ¶ 55. There are no other allegations specifically demonstrating Carroll's control of the contents of Advanta's public statements or of his culpable participation in the fraudulent scheme.

D. **Count III Against Carroll for Insider Trading**

The Complaint alleges that Carroll sold 38,000 shares of stock during the period of October 16, 2006 through November 27, 2006 for proceeds of $1,027,705 and that these sales represented 75% of his holdings at the time. ¶¶ 158, 160. It further alleges that defendants' selling prior to the Class Period was "paltry" compared to their 2006 selling. ¶ 161. This

allegation is contradicted by the fact that Carroll sold <u>more</u> shares (82,695 shares) for <u>greater</u> proceeds ($1,562,988) in 2005 than he did during the Class Period.  ¶ 161 at pp. 81-82.

Count III contains only the conclusory allegation that "each defendant occupied a position that made him or her privy to non-public information concerning Advanta," that "[b]ecause of this access, each of the defendants knew that the adverse facts specified herein were being concealed and that false and misleading statements were being made," and that "while in the possession of material, non-public information concerning Advanta, defendants sold 900,000 shares of the Company's stock, profiting to the tune of over $27.5 million from their fraudulent scheme while plaintiff purchased contemporaneously." ¶ 211.

In fact, neither Lead Plaintiff nor the named plaintiff purchased contemporaneously with Carroll's sales.  Lead Plaintiff's first purchase was on April 19, 2007, five months after Carroll's last sale. ¶ 40.[4]  The named plaintiff, Steamfitters Local 449 Pension Fund ("Steamfitters"), first purchased on August 1, 2007, eight months after Carroll's last sale.  *See* Schedule A to Steamfitters' complaint filed October 14, 2009 (Docket # 1).

<u>**ARGUMENT**</u>

<u>**COUNTS II AND III MUST BE DISMISSED AS TO CARROLL**</u>

**I.**    <u>**STANDARDS FOR REVIEWING THIS MOTION**</u>

Rather than reiterate the discussion in Defendants' Main Brief regarding the standards to apply to this Motion, Carroll summarizes in the table below why the claims against him fail the three basic pleading rules that apply to this case: Rule 8(a), Rule 9(b) and the pleading requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA").

---

[4]   Paragraph 40 refers to Lead Plaintiff's "Certification previously filed with the Court on December 14, 2009." That Certification is Exhibit C to the Affidavit of Deborah Gross in support of Lead Plaintiff's motion; it shows that Lead Plaintiff's earliest purchase was on April 19, 2007.

| Rule | Count II (control-person) fails because it -- | Count III (insider trading) fails because it -- |
|---|---|---|
| **Rule 8(a)** requires that the complaint allege facts which, if true, state a **cognizable claim**, have some **plausibility**, and are **not conclusory**. Fed. R. Civ. P. 8(a); *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007); *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1953 (2009); *Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009). | - contains only conclusory allegations of Carroll's control over Advanta's public statements and his culpable participation in the frauds. *See* Points II.B, II.C and II.D, pp. 10-13 below. | - requires the implausible inference that Carroll was instigating two audits and a government investigation of the same facts he was fraudulently concealing while selling stock. *See* Point III.D, p. 17. |
| **Rule 9(b)** requires allegations of **scienter** to be stated with **particularity**. Fed. R. Civ. P. 9(b). Inference of scienter must be "at least as compelling as any opposing inference." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 320, 127 S.Ct. 2499, 2508 (2007). | - uses group pleading to lump Carroll in with all the other defendants. *See* Point II.B, p. 10.<br><br>- fails to allege with particularity that Carroll culpably participated in any alleged fraud – i.e. that he had any scienter. *See* Point II.D, pp. 12-13. | - does not allege facts showing<br>• the materiality of the Delinquency Issue, or<br>• Carroll's scienter as to the alleged frauds other than the Delinquency Issue.<br>*See* Point III.C, pp. 15-16. |
| **The PSLRA** requires that the complaint state with **particularity** facts giving rise to a **strong inference** that **each defendant** acted with the **required state of mind**. 15 U.S.C. § 78u-4(b)(2). | - uses group pleading to lump Carroll in with all the other defendants. *See* Point II.B, p. 10.<br><br>- does not allege specific facts showing:<br>• Carroll's control over Advanta's public statements. *See* Point II.C, pp. 11-12.<br>• the materiality of the Delinquency Issue. *See* Points II.D, pp. 12-13, and III.C, pp. 15-16.<br>• Carroll's scienter as to the alleged frauds other than the Delinquency Issue. *See* Point II.D, pp. 12-13. | - fails to show that Carroll's trading was suspicious or unusual. *See* Point III.E, pp. 17-19.<br><br>- does not allege specific facts showing<br>• the materiality of the Delinquency Issue, or<br>• Carroll's scienter as to the alleged frauds other than the Delinquency Issue.<br>*See* Point III.C, pp. 15-16. |

Count II also fails because it is time-barred (Point II.A, p. 9). Count III also fails because neither Lead Plaintiff nor the named plaintiff traded contemporaneously with Carroll's sales (Point III.A, pp. 13-14) and there is no allegation of a predicate act by Carroll (Point III.B, p. 14).

## II.   COUNT II MUST BE DISMISSED AS TO CARROLL

Count II is a group claim against all the defendants for control-person liability under Section 20(a) of the Exchange Act.[5]  15 U.S.C. § 78t(a).  Liability under this section requires that the defendant have control over the primary violator(s) and that the defendant culpably participate in the fraud.  *Rochez Bros., Inc. v. Rhoades*, 527 F.2d 880, 889-891 (3d Cir. 1975).  Count II should be dismissed for the reasons set forth in the Main Brief at pages 48-49 and, with respect to Carroll, because: (a) it is time-barred; (b) it resorts to group pleading; and (c) it does not plead specific facts showing Carroll's control and culpable participation.

### A.   Count II is Time-Barred

Count II is time-barred with respect to Carroll for the reasons set forth in the Director Defendants' Memorandum at pages 4-7.  To summarize:  Lead Plaintiff was aware of the fraud no later than January 30, 2008 (the end of the Class Period).  Carroll was named as a defendant in Count II in August 2010 – two years and six months later.  The statute of limitations is two years from discovery of the fraud, or five years after the event, whichever comes first.  28 U.S.C. § 1658(b)(1).  The Section 20(a) claim for control-person liability is therefore time-barred.

Count II does not "relate back" to the original complaint for the reasons set forth in the Director Defendants' Memorandum at page 7, footnote 3.  Lead Plaintiff knew of Carroll's identity when the original complaint was filed.  Carroll was identified in various SEC filings as chief credit officer prior to filing of the original complaint.  Therefore, Lead Plaintiff's failure to name Carroll in the original complaint was not a mistake.  *Arthur v. Maersk, Inc.*, 434 F.3d 196,

---

[5]   Section 20(a) provides: "Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action."

209 (3d Cir. 2006); *Allen v. AMTRAK*, 2004 U.S. Dist. LEXIS 24846, 32-33 (E.D. Pa. Dec. 7, 2004).

**B.     Count II Constitutes Impermissible Group Pleading**

Unlike eleven defendants, Carroll is not named as a defendant in Count I (the Rule 10b-5 claim), is not alleged to have made any misleading statements, and is not specifically alleged to have known or recklessly disregarded any of the alleged frauds, except the Delinquency Issue. Nevertheless, Carroll is grouped with all the defendants in Count II for control-person liability with respect to all the Company's public statements and all the alleged frauds.  This liability is predicated solely on the conclusory group allegation that all the defendants had control over the contents of the Company's public statements and knew of those statements' falsity.  ¶¶ 55, 208. Count II is based on impermissible group pleading to get Carroll into this litigation through the back door of innuendo and guilt-by-association.

Group pleading is not permitted under the PSLRA.  *See* 15 U.S.C. § 78u-4(b)(2); *Winer Family Trust v. Queen*, 503 F.3d 319, 334-37 (3d Cir. 2007) (dismissing claims against some defendants because they were not specifically connected to alleged misstatements).   This prohibition applies to Section 20(a) because the claim is a "private action arising under this chapter"[6] requiring proof that the defendant acted with a particular state of mind.  15 U.S.C. § 78u-4(b); *see Snowstorm Acquisition Corp. v. Tecumseh Products Co.*, No. 09-866-SLR, 2010 WL 3735383, at *14 (D. Del. Sept. 21, 2010) (dismissing 20(a) claims based on group pleading), *citing Winer*, 503 F.3d at 337; *In re Digital Island Sec. Litig.*, 223 F. Supp. 2d 546, 560-61 (D. Del. 2002), *aff'd* 357 F.3d 322 (3d Cir. 2004) (same).

---

[6]  "This chapter" is the Exchange Act.  *In re Initial Public Offering Sec. Litig.*, 241 F. Supp. 2d 281, 337 (S.D.N.Y. 2003).

### C.     There are No Specific Allegations Showing Carroll's Control

Even if the control-person allegations against Carroll were not deemed group pleading, they still fail to specifically plead his control of either Advanta or its public statements.  This specificity is required by the PSLRA.  *Snowstorm,* 2010 WL 3735383, at *14 (dismissing unspecific control claims); *Digital Island*, 223 F. Supp. 2d at 560-61; *In re Equimed, Inc.*, No. 98-CV-5374 NS, 2000 WL 562909, at *10 (E.D. Pa. May 9, 2000); *In re Cendant Corp. Sec. Litig.,* 76 F. Supp. 2d 539, 549 n. 5 (D.N.J. 1999).  Further, Rule 8(a) requires that all factual allegations be non-conclusory.  *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007);[7] *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210-211 (3d Cir. 2009) (court must accept well-pleaded facts as true but may disregard all legal conclusions).

Here, the Complaint contains no specific control allegations against Carroll, alleging only that all defendants as a group had access to and the power to prevent or change the Company's public statements.  In *Digital Island*, the court held that similar boilerplate allegations were insufficiently specific under the PSLRA.  223 F. Supp. 2d at 562; *see Copland v. Grumet*, No. 96-3351 MLP, 1998 WL 256654, at *15 (D.N.J. Jan. 9, 1998) (dismissing 20(a) claims based on allegations of control by virtue of defendants' positions).

These requirements are particularly fitting in Carroll's case because, unlike the other defendants (except for Moore), Carroll was not a top officer responsible for overall Company policy, he did not sign or make any of the alleged false public statements, and there is no specific allegation indicating that Carroll had any responsibility for the Company's SEC filings or other public statements.  Indeed, for a second-tier manager like Carroll, control of the Company would require either: (1) that he control his own supervisors, or (2) that he consciously act in concert

---

[7]   *Twombly*'s rules for pleading non-conclusory facts showing a plausible basis for liability applies to all civil complaints in federal court.  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1953 (2009).

with them toward a common, illicit goal.   The first alternative is highly implausible, thus

violating *Twombly* and *Fowler*.   The second alternative requires specific pleading like any other

scienter allegation, which is clearly not present here.[8]

### D.     There are No Specific Allegations Showing Carroll's Culpable Participation

A plaintiff must plead facts showing "the controlling person's conscious misbehavior as a

culpable participant in the fraud."   *Equimed*, 2000 WL 562909, at *10, *quoting In re Cendant

Corp. Sec. Litig.*, 76 F. Supp. 2d at 549 n. 5; *accord WM High Yield Fund v. O'Hanlon*, Civ. A.

No. 04-3423, 2005 WL 1017811, at *9 (E.D. Pa. Apr. 29, 2005); *In re Ravisent Techs., Inc. Sec.

Litig.*, Civ. A. No. 00-1014, 2004 WL 1563024, at *15 (E.D. Pa. July 13, 2004).   The need to

plead specific facts showing culpable participation is a "heavy burden," *Digital Island,* 223 F.

Supp. 2d at 563, because the term "culpable participation" means "scienter," when used in the

control-person context.   *See Rochez Bros.,* 527 F.2d at 890 (discussing culpable participation in

the sense of knowing of the misrepresentations or culpably participating in them "in any

meaningful sense").

In this case, there are no facts alleged showing that Carroll did anything at all to

participate in the alleged scheme.   There are no allegations showing that he knew anything about

the scheme except for the Delinquency Issue, which, by itself, is not adequately alleged to be

---

[8]   Opinions in this Circuit holding that a plaintiff need not specifically allege facts showing control (e.g., *In re American Business Fin. Servs.*, No. 05-252, 2007 WL 81937, at *12 (E.D. Pa. Jan. 9, 2007); *In re U.S. Interactive, Inc.*, No. CV 522, 2002 WL 1971252, at *20 (E.D. Pa. Aug. 23, 2002); *In re Tel-Save Sec. Litig.*, No. 98-CV-3145, 1999 WL 999427 (E.D. Pa. Oct. 19, 1999)) should not be followed because they disregard the PSLRA specificity requirements and the requirement of Rule 8(a), enunciated in *Twombly, Iqbal, and Fowler*, that factual allegations be non-conclusory.   In addition, these cases concern directors or top officers responsible for overall company polity – *i.e.,* the CEO, CFO, and COO.   Such persons normally are responsible for a company's overall policy and public statements, and they normally sign SEC filings.   Further control allegations are therefore unnecessary.   By contrast, when defendants are in Carroll's position, i.e. when they are not top officers or directors and did not sign SEC filings, courts require more specific control allegations.   *See, e.g., Snowstorm,* 2010 WL 3735383, at *1-2 (outside consultants); *Digital Island,* 223 F. Supp. 2d at 562 (directors who did not sign SEC filings); *cf. Equimed,* 2000 WL 562909, at *2, *10 (requiring specific control allegations and holding that allegations-by-position sufficient where defendant was chairman, owned a majority of the stock, and was directly involved in day-to-day operations).

material.  (*See* Point III.A *infra* at p. 13).  Thus, there is no factual basis for the inference that Carroll culpably participated in any fraudulent scheme.[9]

### III.   COUNT III, THE INSIDER TRADING CLAIM, MUST BE DISMISSED AS TO CARROLL

Count III charges Carroll with insider selling in violation of Section 20A, 15 U.S.C. § 78t-1(a).  The Complaint alleges that Carroll sold Advanta stock while in possession of material undisclosed information.  ¶ 158.

To state a claim under Section 20A, a plaintiff must show that a defendant sold stock: (a) contemporaneously with plaintiff's purchase of the stock; (b) while in possession of material undisclosed information; and (c) while committing a separate violation of the Exchange Act.  *See In re Merck & Co., Inc. Vytorin/Zetia Sec. Litig.*, No. 08-CV-2177 (DMC), 2009 WL 2855601, at *3 (D.N.J. Sept. 2, 2009), *quoting In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 541 (3d Cir. 1999).  Count III against Carroll fails all three requirements.  It also fails Rule 8's requirement that allegations be both plausible and non-conclusory and fails to allege that the sales were suspicious in amount or timing.

### A.   Carroll's Sales are Not Contemporaneous with Plaintiff's Purchases

Carroll's sales during the Class Period occurred during October and November 2006.  His last sale was on November 27, 2006.  Lead Plaintiff's first purchase of Advanta shares was on April 19, 2007, nearly five months after Carroll's last sale.  *Supra* at p. 7 & fn. 4.  These transactions are not contemporaneous even under the most generous reading of Section 20A.  In this Circuit, courts have limited the permissible gap to the same day.  *In re Able Laboratories*

---

[9]   Opinions in this Circuit holding that culpable participation need not be specifically pleaded (*e.g. Belmont v. MB Investment Partners, Inc.*, Civil Action No. 09-4951, 2010 WL 2348703, at *9-10 (E.D. Pa. June 10, 2010), and cases cited therein) should not be followed because they ignore the PSLRA requirement that factual allegations raise a strong inference of scienter.  As noted above on page 12, "culpable participation" is the equivalent of scienter.  These opinions also ignore the requirement of Rule 8(a), enunciated in *Twombly, Iqbal, and Fowler*, that factual allegations be non-conclusory.

*Sec. Litig.*, No. 05-2681 (JAG), 2008 WL 1967509, at \*26-27 (D.N.J. March 24, 2008) (insider trading must occur on same day in cases involving a publicly traded company with millions of outstanding shares); *Copland v. Grumet,* 88 F. Supp. 2d 326, 338 (D.N.J. 1999) (same day).[10]

Because Lead Plaintiff has no standing to pursue the insider trading claim against Carroll, the claim must be dismissed.  *In re VeriFone Sec. Litig.*, 784 F. Supp. 1471, 1489-90 (N.D. Cal. 1992).  Only a representative plaintiff who bought contemporaneously with Carroll may pursue that claim on behalf of the class.  *Id; accord In re Aldus Sec. Lit.,* No. 92-885C, 1993 WL 121478, at \* 8 (W.D. Wash. 1993); *La Mar v. H & B Novelty and Loan Co.,* 489 F.2d 461, 465-66 (9th Cir. 1973); *In re Seagate Technology II Sec. Litig.,* Fed.Sec.L.Rep. ¶ 95, 427, 1990 WL 134963 (N.D.Cal.1990).

### B.        No Predicate Act by Carroll is Alleged

A claim under Section 20A requires "proof of a separate underlying violation of the Exchange Act."  *Advanta*, 180 F.3d at 541 (affirming dismissal of 20A claim for lack of predicate act), *citing Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co.,* 32 F.3d 697, 703 (2d Cir. 1994) and *VeriFone*, 11 F.3d at  872; *see Vytorin/Zetia*, 2009 WL 2855601, at \*3, quoting *Advanta*.  Here, the Complaint does not claim that Carroll violated Section 10(b) and Rule 10b-5, and for the reasons stated above, the Complaint does not adequately allege any control-person violation by Carroll.  Count III, therefore, must be dismissed as to Carroll.

---

[10] Contemporaneous trading acts as a substitute for privity in a vast and anonymous securities exchange system. The more efficient the system, the less time is needed for this substitution function.  *In re AST Research Sec. Litig.,* 887 F. Supp. 231, 234 (C.D. Cal. 1995).  In most cases, including this one, where the company has millions of shares outstanding and the market effectively tracks insider sales, an outer limit of one day is appropriate.  *See In re MicroStrategy, Inc.,* 115 F. Supp. 2d 620, 662 n. 87 (E.D. Va. 2000).  At least two courts have held that a one month gap is too long.  *Wilson v. Comtech Telecommunications Corp.,* 648 F.2d 88, 94-95 (2d Cir. 1981); *Neubronner v. Milken,* 6 F.3d 666, 669-70 (9th Cir. 1993).

C.      **The Materiality of the Delinquency Issue is Not Specifically Alleged**

Section 20A provides for liability for selling stock "while in possession of material, nonpublic information."  Information is material if there is "a substantial likelihood that the misrepresented or omitted facts would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available."  *TSC Industries, Inc. v. Northway, Inc.*, 98 S.Ct. 2126, 2132 (1976).  "[E]stablishing materiality is the first step" for a securities fraud claim.  *In re Merck Co., Inc. Sec. Litig.*, 432 F.3d 61 (3d Cir. 2005).  The claim against Carroll fails that step.

Carroll allegedly knew only about the Delinquency Issue, which caused the Company's true delinquency rates to be "masked," which caused reserves to be understated, and which caused the Company's earnings to be misstated.  *Supra* at pp. 3-4.  But the Complaint supplies no specifics about these claims.  It alleges no specific degree by which the delinquency rates were made to appear better than they actually were, no specific inflation of the Company's financial results resulting from the "masking," no correction or restatement of the delinquency rates, no connection between the Delinquency Issue and the increase in delinquencies and write-offs beginning in October 2007, and no finding or penalty resulting from the FDIC investigation.

Allegations concerning accounting or financial fraud are required to set forth the numerical amount of the misstatement or other specific indicia of the alleged fraud's effect on the company's earnings.  If such information is not provided, or if the effect on the company's earnings is negligible, the claim must be dismissed.  *See, e.g., Cal. Pub. Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 153 (3d Cir. 2004) (plaintiffs failed to "provide any particulars regarding the amount by which reserves were misstated, or how much revenue was improperly recognized"); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1427 (3d Cir. 1997) (the alleged undisclosed facts had a negligible effect on earnings).

- 15 -

Another case in this district dismissed similar allegations devoid of specific facts showing materiality.  In *In re American Business Servs, Inc. Sec. Litig.*, 413 F. Supp. 2d 378 (E.D. Pa. 2005), the company, which sold and serviced home equity loans, and its officers were alleged to have "fraudulently altered their loan delinquency ratio by engaging in practices to artificially lower the number of loans that were reported as delinquent."  The court held that the complaint failed to supply details as to "when or with what frequency such practices were used," "how often past due amounts were rolled onto the backs of loans or what percentage of loans were saved from delinquency using this technique," "the frequency with which bad checks were accepted or the number of actually delinquent loans that were made current through the acceptance of bad checks," "how often the FFIEC guidelines were violated due to the aggressive use of these agreements or how many loans were subjected to aggressive re-aging techniques," or "the correlation between the award of cash bonuses to collectors who met their monthly delinquency goals and their use of improper practices to improve their delinquency numbers." *Id*. at 390-91.

The allegations concerning the Delinquency Issue in this case are equally bereft of specificity concerning materiality.  Even worse, the second internal audit report found that the "temporary impact on the timing of reported chargeoffs was immaterial for financial reporting purposes."[11]  *Supra* at pp. 4-5.  Count III must therefore be dismissed.  *See, e.g., In re Synchronoss Sec. Litig.*, 705 F. Supp. 2d 367, 416 (D.N.J. 2010) (dismissing complaint for failure to allege that inside seller was in possession of confidential material information).

---

[11] The Court may consider the audit reports (Exhibits A and B) because they are specifically referenced in the Complaint.  *See In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999) (court may rely on any "document[s] integral to or explicitly relied upon in the complaint").

### D.     The Insider Selling Claim Against Carroll is Not Plausible

A complaint must do more than allege facts evincing the mere possibility of unlawful conduct.  The allegations must be "enough to raise a right to relief beyond the speculative level." *Twombly*, 127 S.Ct. at 1965.  The inference of unlawful conduct must be plausible rather than merely possible.  *Id.*  The alleged facts must raise a reasonable expectation that discovery will reveal evidence of unlawful conduct.  *Id.*  In a securities fraud case, the alleged facts must raise a "strong inference that the defendant acted with the required state of mind," and the inference must be "at least as compelling as any opposing inference."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S.Ct. 2499, 2508 (2007).

In this case, the Court is asked to infer that Carroll instigated two internal audits and an FDIC investigation of the collections department's handling of delinquent accounts at the same time that he was fraudulently selling Advanta stock.  *Supra* at pp. 4-5.  This inference is not just "remarkable," as the Complaint puts it, but incredible.  It is far more plausible to infer: (a) that Carroll considered the Delinquency Issue to be immaterial, particularly since the second audit report so concluded; and (b) that Carroll's intent was to prevent fraud rather than cause it, since it was he who instigated the audits and the FDIC investigation.

### E.     Carroll's Class Period Selling is Not Suspicious or Unusual

"We will not infer fraudulent intent from the mere fact that some officers sold stock." *Burlington,* 114 F.2d at 1424.  Rather, the trades must be "made at times and in quantities that were suspicious enough to support the necessary strong inference of scienter."  *Id.*  The quantities sold must be "large in comparison to the individual defendants' previous trading practices."  *Advanta,* 180 F.3d at 541.  The Complaint fails this requirement with respect to

Carroll, who sold more shares of stock for greater proceeds in a similar period in 2005 than he did in 2006, during the Class Period:[12]

| Period | Rel. to Class Period | # Shares Sold | Proceeds | Complaint Citation |
|--------|---------------------|---------------|----------|-------------------|
| Aug.-Sept. 2005 | Before Class Period | 82,000 | $1,562,988 | ¶ 161, pp. 81-82 |
| Oct.-Nov. 2006 | During Class Period | 39,000 | $1,027,705 | ¶ 158, pp. 73-74 |

*See Advanta*, 180 F.3d at 541; *Building Trades United Pension Trust Fund v. Kenexa Corp.*, No. 09-2642, 2010 WL 3749459, at *10 (E.D. Pa. Sept. 27, 2010) (defendant's sales were consistent with sales in the year prior to the class period); *Synchronoss*, 705 F. Supp. 2d at 367 (trading during similar period prior to class period not suspicious).

Other facts also negate an inference of Carroll's scienter. First, the stock Carroll sold was part of his normal annual compensation because he elected to receive his bonus in stock rather than cash for the years 2002 through 2006. *See* Exhibit D (Advanta 2006 proxy statement, p. 11; 2007 proxy statement pp. 11-12.);[13] *see Building Trades*, 2010 WL 3749459, at *10 (defendant's trading in line with compensation is not suspicious); *Synchronoss*, 705 F. Supp. 2d at 410-411 (trading pursuant to compensation plans not suspicious).

Second, Carroll sold at the beginning of the Class Period and nearly a year before the adverse news beginning in October 2007. This large time gap strongly negates fraudulent intent. *See Building Trades,* 2010 WL 3749459, at *10 (sales five months before the bad news); *In re*

---

[12] Carroll's sales in 2005 and 2006 were made pursuant to 10b5-1 sales plans. *See* Exhibit C (Form 4s). Trading pursuant to such plans "undermines any allegation that the timing or amounts of the trades was unusual or suspicious." *In re Gildan Activewear, Inc.*, 636 F. Supp. 2d 261, 272 (S.D.N.Y. 2009) (citing cases); *see Building Trades*, 2010 WL 3749459, at *9.

[13] On a motion to dismiss, a court may take judicial notice of Form 4s and other SEC-filed documents. *See In re Adolor Corp. Sec. Litig.*, 616 F. Supp. 2d 551, 573 n.20 (E.D. Pa. 2009) (taking judicial notice of Form 4s in evaluating plaintiff's scienter allegations); *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1331 (3d Cir. 2002) ("completely accept[ing] the district court'" reliance on "documents filed with the SEC, but not relied upon in the Complaint").

*Astea Intern. Inc. Sec. Litig.,* No. 06-1467, 2007 WL 2306586, at *10 (E.D. Pa. Aug. 9, 2007) (sales five months before the bad news).[14]

Third, as shown above, the Complaint alleges no facts showing that Carroll knew that the stock price was inflated at the time of his sale; the only fraud he is alleged to have known about (*i.e.* the Delinquency Issue) is not shown to be material.  *Supra* at pp. 4-6; *see In re NutriSystem, Inc. Deriv. Litig.*, 666 F. Supp. 2d 501 (E.D. Pa. 2009) (complaint dismissed; lack of specific allegations that defendants knew material undisclosed information).

For all these reasons, Carroll's stock sales do not support a strong inference of scienter.

## **CONCLUSION**

For all the reasons stated herein and in Defendants' Main Brief, the Complaint in its entirety must be dismissed with prejudice as to Carroll.

---

[14]  The original complaint in this action defined a class period beginning October 31, 2006, the date of Advanta's first alleged misrepresentation.  The only apparent reason for changing the Class Period start date to October 16 is that Carroll and defendant Weinstock began selling on that date.  *See In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1092 (9th Cir. 2002) ("[L]engthening the class period allowed the plaintiffs to sweep as many stock sales into their totals as possible, thereby making the stock sales appear more suspicious than they would be with a shorter class period").

Respectfully submitted,

/s/ David W. Engstrom
David W. Engstrom (76178)
HARKINS CUNNINGHAM LLP
2800 One Commerce Square
2005 Market Street
Philadelphia, PA 19103
Tel:  (215) 851-6700
Fax: (215) 851-6710

Thomas R. Ajamie
Ann Ryan Robertson
Wallace A. Showman
AJAMIE LLP
Pennzoil Place – South Tower
711 Louisiana Street, Suite 2150
Houston, Texas 77002
Tel:  (713) 860-1600
Fax: (713) 860-1699

ATTORNEYS FOR DEFENDANT
Dated: October 18, 2010        CHRISTOPHER J. CARROLL

## <u>CERTIFICATE OF SERVICE</u>

I, David W. Engstrom, hereby certify that on the 18th day of October, 2010, I caused a true and correct copy of the foregoing Motion of Defendant Christopher J. Carroll to Dismiss the Amended Complaint, Memorandum of Law in support thereof, and proposed Order to be electronically filed, available for viewing and downloading on the ECF system, and to be served on the following persons by first class mail, postage prepaid:

Deborah R. Gross
Law Offices Bernard M. Gross, P.C.
Wanamaker Bldg., Suite 450
100 Penn Square East
Philadelphia, PA 19107

*Liaison Attorney for Plaintiff*

Steven B. Feirson
Michael L. Kichline
Sarah L. Westbrook
Dechert LLP
Cira Centre, 2929 Arch Street
Philadelphia, PA  19104

*Attorneys for Robert S. Blank,*
*Max Botel, Thomas Costello,*
*Dana Becker Dunn, Ronald Lubner,*
*Olaf Olafsson, and Michael Stolper*

Douglas R. Britton
Shannon M. Matera
Robbins Gellar Rudman & Dowd LLP
655 West Broadway, Suite 1900
San Diego, CA 92101

*Lead Attorney for Plaintiff*

David L. Comerford
Jeffery A. Dailey
Akin Gump Strauss Hauer & Feld LLP
Two Commerce Square
2001 Market Street, Suite 4100
Philadelphia, PA  19103

*Attorney for John F. Moore*

/s/ David W. Engstrom
David W. Engstrom