# EXHIBIT A

V26 06-15-2009

## FEDERAL DEPOSIT INSURANCE CORPORATION

### WASHINGTON, D.C.

| | |
|---|---|
| In the Matter of ) | |
| ) | ORDER TO CEASE AND DESIST, |
| ADVANTA BANK CORP. ) | ORDER FOR RESTITUTION |
| DRAPER, UTAH ) | and |
| ) | ORDER TO PAY |
| ) | |
| (INSURED STATE NONMEMBER BANK) ) | FDIC-08-259b |
| ) | FDIC-08-403k |

ADVANTA BANK CORP., Draper, Utah ("Bank"), having been advised of its right to a Notice of Charges and of Hearing under section 8(b) of the Federal Deposit Insurance Act ("Act"), 12 U.S.C. § 1818(b), detailing the violations of law and/or regulations and unsafe or unsound banking practices alleged to have been committed by the Bank prior to the Bank's closure of credit card accounts to new transactions in May 2009, and of its right to a hearing with respect to the foregoing, and having waived those rights, entered into a STIPULATION AND CONSENT TO THE ISSUANCE OF AN ORDER TO CEASE AND DESIST, ORDER FOR RESTITUTION, and ORDER TO PAY ("CONSENT AGREEMENT") with a representative of the Legal Division of the Federal Deposit Insurance Corporation ("FDIC"), dated June 24, 2009, whereby, solely for the purpose of this proceeding and without admitting or denying the alleged violations of law and/or regulations and

Page 1 of 17

unsafe or unsound banking practices, the Bank consented to the issuance of an ORDER TO CEASE AND DESIST, ORDER FOR RESTITUTION, and ORDER TO PAY ("ORDER") by the FDIC.

The FDIC considered the matter and determined that it has reason to believe that the Bank committed violations of law and/or regulations and engaged in unsafe or unsound banking practices, including, but not limited to, violations of section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1) ("Section 5") in connection with the marketing of the Cash Back Reward feature of the Bank's credit card products and acts or practices related to the repricing of credit card accounts; the adverse action notification requirements of the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691 et seq. ("ECOA"), set forth at 15 U.S.C. § 1691(d), and Regulation B of the Board of Governors of the Federal Reserve System, 12 C.F.R. Part 202 et seq. ("Regulation B"), set forth at 12 C.F.R. § 202.9 (collectively "Adverse Action Notification Requirements"); and operating the Bank without effective oversight and supervision of the Bank's credit card products; that the Bank was unjustly enriched in connection with such violations or practices; and that the Bank should be required to make restitution to remedy the injuries resulting from such violations or practices.

The FDIC, therefore, accepts the CONSENT AGREEMENT and issues the following:

## ORDER TO CEASE AND DESIST

IT IS HEREBY ORDERED, that the Bank, its institution-affiliated parties, as that term is defined in section 3(u) of the Act, 12 U.S.C. § 1813(u), and its successors and assigns, cease and desist from the following violations of law and/or regulations and from engaging in the following unsafe or unsound banking practices:

(a)   operating in violation of Section 5; and

(b)   operating in violation of the Adverse Action Notification Requirements.

## ORDER FOR RESTITUTION AND OTHER RELIEF

IT IS FURTHER ORDERED THAT:

1.   Within sixty (60) days of the effective date of this ORDER, the Bank shall commence the restitution and other relief described below and complete such restitution within one hundred and twenty (120) days of the effective date of this ORDER.  For purposes of this ORDER, the following definitions will apply:

(a)   *Customer* includes any individual, group, unincorporated association, corporation, limited liability corporation, limited or general partnership or other business entity.

(b)   *Cash Back Reward* means the payment by the Bank to a customer of a specified percentage of the purchase price charged to a Bank credit card account.

(c)   *Stated Cash Back Reward* means the Cash Back Reward most frequently and prominently advertised in a solicitation for the Bank's credit card products.

(d)   *Cash Back Reward Account* means a Bank credit card account on which Cash Back Rewards are or were earned.

(e)   *Cash Back Accountholder* means each customer who opens or opened a Cash Back Reward Account.

(f)   *Bonus Category Purchase* means a qualifying purchase charged to a Bank credit card for which the credit card solicitation states that the Cash Back Accountholder will earn the Stated Cash Back.

(g)   *Ascending Tier Account* means a Cash Back Reward Account in which the Cash Back Accountholder earns or earned less than the Stated Cash Back Reward until the aggregate Bonus Category Purchases reaches or reached a level established by the Bank.

Page 4 of 17

(h)   *Cap Account* means a Cash Back Reward Account in which the Cash Back Accountholder earns or earned the Stated Cash Back Reward on Bonus Category Purchases until the aggregate Cash Back Rewards earned on Bonus Category Purchases and other purchases reaches or reached an amount established by the Bank, after which the Cash Back Accountholder earns or earned 0% Cash Back Rewards on Bonus Category Purchases.

(i)   *Descending Tier Account* means a Cash Back Reward Account in which the Cash Back Accountholder earns or earned the Stated Cash Back Reward until the aggregate Bonus Category Purchases reaches or reached the amount established by the Bank.

(j)   *Threshold* means the minimum amount of unpaid, earned Cash Back Rewards that the Cash Back Accountholder must accrue by the end of a billing cycle in order for the Bank to issue a check to the Cash Back Accountholder for the earned Cash Back Reward.

(k)   *Reprice* means the upward adjustment of an Annual Percentage Rate ("APR") applicable to a Bank Credit Card Account except for the upward adjustment of an APR due to (i) a Default Event; (ii) the operation of an index for variable rate APRs; (iii) a reset of the variable rate floor (*e.g.*, an adjustment to the margin or change in the underlying index); (iv) loss or expiration of a promotional rate; or (v) termination or

completion of a workout arrangement.

(l)   *Default Event* means (i) not making payment on the Customer's credit card account so that it is received by the Bank by its due date, (ii) paying less than the minimum amount due on the Customer's credit card account, (iii) exceeding the credit limit of the Customer's credit card account, and/or (iv) making a payment on the credit card account that is not honored by the Customer's bank.

(m)   *Eligible Customer* means:

(i)   any Cash Back Accountholder who, during the period from January 17, 2004 to the effective date of this ORDER, applied for and received a Bank credit card in response to a written, web-based, or alternative media solicitation or advertisement for a Bank credit card that provided Cash Back Rewards, that did not contain the words "up to" preceding the Stated Cash Back Reward. This includes existing Cash Back Reward Accountholders; former Cash Back Reward Accountholders of a Cash Back Reward Account that is now closed, charged off, or has been sold to a third party; and Cash Back Accountholders who, after opening a Cash Back Reward Account, transferred or migrated from the initial Cash Back Reward program to another Cash Back Reward program, business reward program, travel reward program, or any other type of Bank credit card product, unless Eligible Customer

Page 6 of 17

already is provided Restitution with respect to one of the Cash Back Reward programs.

(ii) any Bank credit card accountholder whose credit card account was repriced (as defined in subparagraph 1(k)) from June 1, 2007 through 2008 unless an accountholder exercised the opt-out right pursuant to the Bank's notice of change in terms.  This includes existing Bank credit card accountholders and former Bank credit card accountholders of a credit card account that is now closed, charged off, or has been transferred by the Bank.

(iii) It is agreed that the file containing the customer list submitted by the Bank and approved by the FDIC constitutes compliance with the Order in terms of the scope of Eligible Customers awarded restitution under paragraph 3.

2.  Restitution - Cash Back Reward Account: Except as provided in subparagraph (e) of this paragraph and paragraph 4, the Bank shall pay each Eligible Customer the full amount of the applicable Stated Cash Back Reward for each Bonus Category Purchase, regardless of any Threshold established by the Bank, from the date the Cash Back Reward Account was opened through and including the end of the billing cycles indicated below, less the amount of Cash Back Rewards attributable to the Bonus Category Purchases that occurred during the billing cycles

Page 7 of 17

referenced below and that were actually paid by the Bank to the Eligible Customer:

(a)   Ascending Tier Account – From opening of Cash Back Reward Account through three (3) billing cycles following the billing cycle in which the first Bonus Category Purchase occurs.

(b)   Descending Tier Account – From opening of Cash Back Reward Account through three (3) billing cycles following the billing cycle in which the aggregate Bonus Category Purchases reach/reached the limit applicable to the Cash Back Reward Account.

(c)   Cap Account with Billing Cycle Cap – From opening of Cash Back Reward Account through three (3) billing cycles following the billing cycle in which the Cash Back Accountholder reaches/reached the Billing Cycle Cap.

(d)   Cap Account without Billing Cycle Cap - From opening of Cash Back Reward Account through three (3) billing cycles after the Cash Back Accountholder reaches/reached the Annual Cap.

(e)   If on the effective date of this Order an Eligible Customer is more than 30 days delinquent in making payment on the Customer's credit card account, the amount of restitution to which the Eligible Customer is entitled will be

credited to the Customer's account.

(f) Excluding restitution credited to accountholders' credit card accounts in accordance with paragraph 4, total restitution under this paragraph shall not exceed $14 million.

3. <u>Restitution, Repriced Account</u>: Except as provided in subparagraphs (a), (b), and (c) of this paragraph and paragraph 4, the Bank shall pay each Eligible Customer the difference between the full amount of the interest that accrued on the Customer's credit card account from the effective date of the repricing (as defined in paragraph 1(k)) through the immediately succeeding two billing cycles ("Restitution Period") and the amount of interest that would have accrued using the APR(s) that would have applied if the account had not been repriced. If an Eligible Customer's credit card account was repriced (as defined herein) more than once, the Bank will pay the Customer restitution with respect to each repricing. Restitution will be reduced by any interest credited to the Customers' accounts in the form of an interest waiver for the Restitution Period.

(a) If a credit card accountholder whose account was repriced from June 1, 2007 through December, 2008 subsequently received a downward rate adjustment for the applicable Restitution Period (for example as a result of enrollment in a workout program, a retention offer or a decrease in the index

for a variable APR ("Lowered Rate"), restitution shall be calculated as the difference between either (i) the full amount of the interest that accrued on the Customer's credit card account from the effective date of the repricing (as defined in paragraph 1(k)) or (ii) the Lowered Rate, whichever was applied through the Restitution Period, and the amount of interest that would have accrued using the APR(s) that would have been applied if the account had not been repriced.

(b)   If on the effective date of this Order an Eligible Customer is more than 30 days delinquent in making payment on the Customer's credit card account, the amount of restitution to which the Eligible Customer is entitled will be credited to the Customer's account.

(c)   Excluding restitution credited to accountholders' credit card accounts in accordance with paragraph 4, total restitution under this paragraph shall not exceed $21 million.

(d)   It is agreed that the restitution calculations submitted by the Bank and approved by the FDIC constitute compliance with the restitution calculations prescribed in this paragraph.

4. <u>Restitution, Charged Off Account</u>:  For Cash Back Reward and repriced accounts that have been charged off, the amount of

restitution to which the Eligible Customer is entitled will be credited to the Customer's account. The Bank will report the reduced outstanding balance to the credit reporting agencies.

## NOTIFICATIONS TO CUSTOMERS

5.  <u>Written Notification, Restitution</u>:  (a) Prior to the effective date of this ORDER, the Bank shall submit the proposed text of the letters that will accompany the restitution checks to Eligible Customers (except customers receiving a credit under paragraphs 2(e), 3(b), and 4 above) under the terms of this ORDER to the Regional Director of the FDIC's New York Regional Office ("Regional Director") for review and non-objection.  Such letters shall include satisfactory language explaining the reason the Bank is sending a restitution check together with an explanation of the manner in which the amount of restitution was calculated.

(b)  The Regional Director shall notify the Bank in writing of any comments or non-objection.  The Bank shall then address any comments of the Regional Director, making such changes as may be required to the proposed letter(s).

(c)  The letters, incorporating any changes that may be required in response to comments by the Regional Director, shall be sent to all Eligible Customers receiving a check for

restitution.

(d)   The letters described above and the restitution checks described in paragraph 6 below shall be mailed no later than one hundred twenty (120) days from the effective date of this ORDER.

(e)   All mailings pursuant to this paragraph shall be sent by United States Postal Service first-class mail, address correction service requested.   The envelope shall contain no materials other than those reviewed and not objected to by the Regional Director.

(f)   The Bank shall make reasonable attempts to locate Eligible Customers, including a standard address search using the National Change of Address System, whose notification letter and/or restitution check is returned for any reason.

(g)   The Bank shall promptly re-mail all returned letters and/or restitution checks to corrected addresses, if any.

6.   Restitution Check:   The face of each restitution check shall clearly and conspicuously state "Please cash or deposit this check within 180 days or it will no longer be valid." After one hundred eighty-seven (187) days from the date the restitution checks were originally mailed, the Bank may void all checks that were returned or have not been negotiated.

7.   Restitution Funds:  (a) In order to allow Eligible Customers who did not receive their restitution check or failed to negotiate it within the original period to receive restitution, the Bank shall retain, in a separate account, the money owed for restitution for a period of five hundred forty (540) days from the effective date of this ORDER.

(b)  The Bank shall determine the disposition of any unclaimed funds in accordance with all applicable laws and regulations.

8.   Restitution Compliance Report:  (a) Within ninety (90) days from the effective date of this Order, and then every thirty (30) days thereafter until completion of the restitution required by this ORDER, the Bank shall prepare and send to the Regional Director a detailed written report that explains the processes and procedures by which the Bank identified the Eligible Customers and determined the applicable restitution amounts described above.  The report shall also include the following: (i) total number of Eligible Customers, (ii) names, contact, and account information of the Eligible Customers, (iii) amount of restitution to which each Eligible Customer is entitled, (iv) number of Eligible Customers who received restitution, (v) total amount of restitution paid, (vi) the Bank's procedures to contact Eligible Customers who did not

Page 13 of 17

receive restitution, and (vii) the amount of undistributed restitution funds.

(b) The Bank shall hire an independent auditor, acceptable to the Regional Director, who may be a certified public accountant who shall verify that the Bank accurately identified Eligible Customers and issued restitution checks as required by this ORDER.

(c) The independent auditor shall prepare a detailed written report of the processes and procedures by which the Bank determined the restitution described in paragraphs 2 and 3 above.

(d) The report described above in paragraph 8(c) shall be submitted to the Regional Director for review, comment, and non-objection sixty (60) days after the Bank has completed all required Restitution.

9.   <u>Record Retention</u>:  For three (3) years from the effective date of this Order, the Bank shall retain all records pertaining to the Restitution including, but not limited to: documentation of the processes and procedures used to determine the Eligible Customers, the names, contact and account information of the Eligible Customers, any mailing records, and documentation that the appropriate restitution was made.

**ORDER TO PAY**

IT IS FURTHER ORDERED THAT, by reason of the alleged violations of law and/or regulations, and after taking into account the CONSENT AGREEMENT, the appropriateness of the penalty with respect to the financial resources and good faith of the Bank, the gravity of the conduct by the Bank, the history of previous conduct by Bank, and such other matters as justice may require, pursuant to section 8(i)(2) of the Act, 12 U.S.C. § 1818(i)(2):

10.   The Bank shall pay a civil money penalty of ONE HUNDRED FIFTY THOUSAND DOLLARS ($150,000).   The Bank shall pay the civil money penalty to the Treasury of the United States. The Bank shall pay such civil money penalty itself, and is prohibited from seeking or accepting indemnification for such payment from any third party.

11.   Notice to Shareholders:  Within sixty (60) days of the effective date of this ORDER, the Bank shall send or otherwise furnish a description of this ORDER to its shareholders.  The description shall fully describe the ORDER in all material respects.  The description and any accompanying communication, statement, or notice shall be sent to the FDIC, Division of Supervision and Customer Protection, Accounting and

Securities Disclosure Section, 550 17th Street, N.W., Washington, D.C. 20429 and to the Regional Director for review at least 20 days prior to dissemination to shareholders.  Any changes requested to be made by the FDIC shall be made prior to dissemination of the description, communication, notice or statement, with a copy provided to the Regional Director.

12.   <u>Regional Director</u>:  Whenever a provision of this ORDER shall require the Bank to submit a proposed letter, report, or other matter to the Regional Director for review, comment and/or non-objection, the Bank shall make such submission to the Regional Director at 20 Exchange Place, New York, New York 10005.

13.   <u>Effective Date</u>:  This ORDER shall be effective on the date of issuance.

14.   <u>Responsible Persons</u>:  The provisions of this ORDER shall be binding on the Bank, its institution-affiliated parties, successors and assigns.

15.   <u>Enforceability</u>:  The provisions of this ORDER shall remain effective and enforceable except to the extent that, and until such time as, any provisions of this ORDER shall have been modified, suspended or terminated in writing by the FDIC.

Pursuant to delegated authority.

Dated at Washington, D.C., this 30th day of June, 2009.

_____/s/_____
Sandra L. Thompson
Director
Division of Supervision and
 Consumer Protection

# FEDERAL DEPOSIT INSURANCE CORPORATION
## WASHINGTON, D.C.

| | | |
|---|---|---|
| In the Matter of | ) | ORDER TO CEASE AND DESIST |
| | ) | |
| | ) | |
| ADVANTA BANK CORP. | ) | |
| DRAPER, UTAH | ) | FDIC-09-266b |
| | ) | |
| (Insured State Nonmember Bank) | ) | |
| | ) | |

Advanta Bank Corp., Draper, Utah ("Bank"), through its board of directors, having been advised of its right to the issuance and service of a NOTICE OF CHARGES AND OF HEARING detailing the unsafe or unsound banking practices alleged to have been committed by the Bank and of its right to a hearing on the alleged charges under section 8(b) of the Federal Deposit Insurance Act ("FDI Act"), 12 U.S.C. § 1818(b), and having waived those rights, entered into a STIPULATION AND CONSENT TO THE ISSUANCE OF AN ORDER TO CEASE AND DESIST ("CONSENT AGREEMENT") with counsel for the Federal Deposit Insurance Corporation ("FDIC") dated June 24, 2009, whereby, solely for the purpose of this proceeding and without admitting or denying the alleged charges of unsafe or unsound banking practices, the Bank consented to the issuance of an ORDER TO CEASE AND DESIST ("ORDER") by the FDIC.

The FDIC considered the matter and determined that they had reason to believe that the Bank may engage in unsafe or unsound banking practices. The FDIC, therefore, accepted the CONSENT AGREEMENT and issued the following:

1

## ORDER TO CEASE AND DESIST

**IT IS ORDERED**, that the Bank, institution-affiliated parties, as that term is defined in section 3(u) of the Act, 12 U.S.C. § 1813(u), of the Bank and its successors and assigns, cease and desist from the following unsafe or unsound banking practices:

1.      The Bank's Board of Directors and Management operating the Bank in a manner that causes the Bank's significant financial deterioration;

2.      Operating with inadequate capital for the Bank's risk profile; and

3.      Operating in a manner that does not sustain satisfactory earnings performance to maintain sufficient capital in relation to the Bank's risk profile.

**IT IS FURTHER ORDERED**, that the Bank, its institution-affiliated parties and its successors and assigns take affirmative action as follows:

## MANAGEMENT

1.      (a)      The Bank shall have and retain qualified management.  Each member of management shall possess qualifications and experience commensurate with his or her duties and responsibilities at the Bank.  The qualifications of management personnel shall be evaluated on their ability to:

(1)      Comply with the requirements of the ORDER;

(2)      Operate all aspects of the Bank in a safe and sound manner, giving due consideration to the Bank's asset quality, capital adequacy, earnings, management effectiveness, liquidity, and its sensitivity to market risk; and

(3)      Comply with applicable laws and regulations.

2

(b)         While this ORDER is in effect, the Bank shall notify the New York

Regional Director ("Regional Director") in writing of any resignations and/or terminations of

any members of its board of directors and/or any of its senior executive officer(s) within 15 days

of the event.  The Bank shall also establish procedures to ensure compliance with section 32 of

the FDI Act, 12 U.S.C. § 1831i and Subpart F of Part 303 of the FDIC's Rules and Regulations,

12 C.F.R. §§ 303.100 through 303.103.  In addition, the Bank shall notify the Regional Director

in writing when it proposes to add any individual to the Bank's board of directors or employ any

individual as a senior executive officer.  The notification must be received at least 30 days before

such addition or employment is intended to become effective and should include a description of

the background and experience of the individual(s) to be added or employed.

## MANAGEMENT – BOARD SUPERVISION

2.         Within 30 days after the effective date of this ORDER, the Bank's board of

directors shall increase its participation in the affairs of the Bank by assuming full responsibility

for the approval of the Bank's policies and objectives and for the supervision of the Bank's

management, including all the Bank's activities.   The board's participation in the Bank's affairs

shall include, at a minimum, monthly meetings in which the following areas shall be reviewed

and approved by the board:  reports of income and expenses;  insider, charged-off, delinquent,

nonaccrual, and recovered loans; investment activities; material changes to policies; and

individual committee actions impacting the aforementioned.  The Bank's board of directors'

minutes shall document the board's reviews and approvals, including the names of any

dissenting directors.

**STRATEGIC PLAN AND BUDGET/EXECUTIVE COMPENSATION**

3.     (a)     Within 30 days of this ORDER, the Bank shall submit to the Regional Director for review and approval a written strategic plan and budget providing for the orderly discontinuance of deposit-taking operations and the voluntary termination of deposit insurance after the repayment in full of all deposits.  In connection therewith, the Bank shall provide the Regional Director with pro forma financial statements for the period necessary to complete the orderly liquidation of assets.  This plan shall, at a minimum, provide for: (i) the responsibilities of the Bank's board of directors regarding the definition, approval, implementation, and monitoring of the strategic plan and budget, and the procedures designed to ensure that the board of directors fulfills such responsibilities; (ii) the repayment in full of all deposits; (iii) the operating assumptions that form the bases for major projected income and expense components; (iv) financial performance objectives, including plans for earnings, liquidity, and capital supported by detailed quarterly and annual pro forma financial statements, including projected budgets, balance sheets, and income statements; and (v) the establishment of a monthly review process to monitor the actual income and expenses of the Bank in comparison to budgetary projections.  Notwithstanding the above, the Bank may submit a plan for future activities during the years in which the Bank is implementing the orderly discontinuation of deposit taking operations contemplated by this provision. The plan, subject to the prior approval of the FDIC, may permit the continuation of deposit taking activities.

(b)     Within 30 days from the effective date of this ORDER, the Bank shall submit to the Regional Director for review and approval an Executive Compensation Plan which incorporates qualitative as well as profitability performance standards. For purposes of this paragraph, "compensation" refers to any and all salaries, bonus and other benefits of every kind

4

and nature whatsoever, whether paid directly or indirectly. Executive officers are defined as any

officer designated as chairman of the board, vice-chairman of the board, president, chief

executive officer, executive vice president, senior vice president, or chief financial officer.

## CAPITAL ADEQUACY

4.      (a)      Within 30 days of the effective date this ORDER, the Bank shall submit to

the Regional Director, for review and approval, an acceptable written plan to achieve and

maintain sufficient capital at the Bank.  The plan shall, at a minimum, address:  (i) the Bank's

current and future capital requirements; (ii) the Bank's level of concentrations of credit; (iii) the

volume of the Bank's adversely classified assets; (iv) the Bank's anticipated level of retained

earnings; (v) the collectability of on-book account receivables and other assets associated with

securitized assets; and (vi) source and timing of additional funds to fulfill the future capital needs

of the Bank.

(b)      Notwithstanding the provisions of paragraph 4(a) the Bank shall at all

times during the term of this ORDER, maintain its Tier 1 Leverage Capital ratio at a level of no

less than 5 percent and Total Risk-Based Capital ratio equal to or greater than 10 percent, which

during the term of this Order shall be calculated and reported in writing to the Regional Director

within 15 days of the end of each month.  For the purpose of reporting the Tier 1 Leverage

Capital ratio at the end of months which do not represent the end of a quarter, the Tier 1

Leverage Capital ratio shall be calculated by substituting month-end Total Assets for quarterly

Average Assets.

(c)      After the Regional Director approves the capital plan, the Bank's board of

directors shall adopt the capital plan, including any modifications or amendments requested by

the Regional Director.  Thereafter, the Bank shall immediately initiate measures detailed in the

capital plan, to the extent such measures have not previously been initiated, to effect compliance

with the plan within thirty (30) days after the Regional Director responds to the capital plan.

      (d)    In addition, the Bank shall comply with the FDIC's Statement of Policy on

Risk-Based Capital found in Appendix A to Part 325 of the FDIC's Rules and Regulations, 12

C.F.R. Part 325, App. A.

      (e)    For purposes of this ORDER, all terms in this Order relating to capital

shall be calculated according to call report instructions, FIL-20-2009, and the methodology set

forth in Part 325 of the FDIC's Rules and Regulations, 12 C.F.R. Part 325.


## FUNDS MANAGEMENT AND LIQUIDITY

5.    Within 30 days of this Order, the Bank shall submit to the Regional Director an

acceptable, comprehensive liquidity contingency plan.  The written plan shall, at a minimum,

      (a)    assess possible liquidity events that the Bank may encounter and identify

responses to the potential impact of such events on the Bank's short-term, intermediate-term, and

long-term liquidity profile;

      (b)    provide for weekly review of the Bank's deposit structure, including volume and

trend of total deposits, maturity distribution of all time deposits; and

      (c)    provide for weekly calculation and reporting of the Bank's liquidity posture in a

format acceptable to the Regional Director.


## PARENT COMPANY/AFFILIATE RELATIONS

6.    Without the prior written consent of the Regional Director, the Bank shall not

directly or indirectly enter into, participate in, or otherwise engage in or allow any extension of

credit to Advanta Corp. (the "Parent Company") or to any other "affiliate" of the Bank and/or

directly or indirectly enter into, participate in, or otherwise engage in or allow any "covered

transaction" or "transaction covered" with the Parent Company or with any "affiliate" of the

Bank regardless of whether such "extension of credit", "covered transaction" or "transaction

covered" would be prohibited, limited or otherwise regulated by Sections 23A or 23B of the

Federal Reserve Act ("Sections 23A and 23B"), 12 U.S.C. §§ 371c and 371c-1.

      For purposes of this ORDER, "extension of credit" shall be defined as set forth at 12

C.F.R. § 215.3 and "affiliate," "covered transaction" and "transaction covered" shall have the

meanings set forth in Sections 23A and 23B; provided, however, that the terms "covered

transactions" and "transactions covered" shall not include the continued provision of and

payments for operational services provided by affiliates under pre-existing contracts in the

normal course of business, including the provision of technology platforms and dual employees.

Additionally, for purposes of this ORDER, any transaction by the Bank with any person or entity

shall be deemed to be a transaction with an "affiliate" of the Bank if any of the proceeds of the

transaction are used for the benefit of, or transferred to any Bank affiliate.

      7.     (a)     As of the effective date of this ORDER, the Bank shall not make any

payment, directly or indirectly, to or for the benefit of the Parent Company or any other Bank

affiliate, without the prior written consent of the Regional Director, except for the continued

provision of and payments for operational services provided by affiliates under reasonable pre-

existing contracts and arrangements in the normal course of business.

          (b)     As of the effective date of this ORDER, the Bank shall not enter into any

contract or modification of an existing contract with its Parent Company or any other Bank

affiliate, or increase the periodic payments under any existing contract with its Parent Company

or any other Bank affiliate without submitting the new contract, modification, or information

concerning the proposed increase in any existing contract with its Parent Company or any other

Bank affiliate to the Regional Director for review and comment.

## CASH TRANSACTIONS

8.     As of the effective date of this Order, all transactions for the withdrawal, transfer

or other utilization of Bank cash assets must be approved in writing by a Bank officer.

## DIVIDEND RESTRICTION

9.     As of the effective date of this ORDER, the Bank shall not declare or pay any

dividends without the prior written consent of the Regional Director.  Requests for approval shall

be received at least 30 days prior to the proposed date for the declaration of dividends and shall

contain, but not be limited to, information on consolidated earnings for the most recent annual

period and the last quarter.

## CONTINUED SERVICING OF CREDIT CARD ACCOUNTS

10.     (a)     The Bank shall take all steps necessary to ensure that the Bank

infrastructure, staffing, and contracts necessary to service the Bank credit card accounts and

related Bank owned and Bank managed (owned by Advanta Business Card Master Trust or the

Parent Company) account receivables (collectively, "account receivables") remain in place.

(b)     Any materially adverse changes to the servicing of the account

receivables, including but not limited to new contracts with vendors, and amendments to or

cancellation of existing contracts with vendors that materially adversely affect the servicing of

the account receivables must receive prior written non-objection by the Regional Director.

8

(c)     Any unavoidable changes to the servicing of the credit card accounts must be reported by the Bank to the Regional Director within 5 days of the Bank receiving notice of the changes.

## CHANGE IN BALANCE SHEET STRUCTURE OR OPERATIONS

11.     Without prior written non-objection from the Regional Director, the Bank shall not engage in any transaction that would materially alter its balance sheet composition, including growth in total assets, significant changes in funding sources, or entering into or exiting existing contracts for services provided by the Bank or to the Bank.

## BROKERED DEPOSITS

12.     As of the effective date of this Order the Bank shall not renew, rollover, or accept "Brokered Deposits" (as such term is defined at 12 C.F.R. § 337.6).

## COMPLIANCE WITH LAWS AND REGULATIONS

13.     Within 30 days from the effective date of this ORDER, the Bank shall take steps necessary, consistent with sound banking practices, to ensure future compliance with all applicable laws, rules, and regulations.

## PROGRESS REPORTS

14.     Within thirty (30) days after the end of the calendar quarter following the effective date of this ORDER, and by the 30th day after the end of every calendar quarter thereafter, the Bank shall furnish written progress reports to the Regional Director detailing the

form, content, and manner of any actions taken to secure compliance with this ORDER, and the results thereof.

## NOTICE TO SHAREHOLDERS

15.     Within thirty (30) days of the effective date of this ORDER, the Bank shall send to its shareholders or otherwise furnish a description of this ORDER.  The description shall fully describe the ORDER in all material respects.  The description and any accompanying communication, statement, or notice shall be sent to the FDIC, Division of Supervision and Consumer Protection, Accounting and Securities Disclosure Section, 550 17th Street, N.W., Washington, D.C. 20429 for review at least 20 days prior to dissemination to shareholders.  Any changes requested to be made by the FDIC shall be made prior to dissemination of the description, communication, notice or statement.

## OTHER ACTIONS

16.     It is expressly and clearly understood that if, at any time, the Regional Director shall deem it appropriate in fulfilling the responsibilities placed upon the Regional Director under applicable law to undertake any further action affecting the Bank, nothing in this ORDER shall in any way inhibit, estop, bar or otherwise prevent the Regional Director from doing so, including, but not limited to, the imposition of civil money penalties.

17.     It is expressly and clearly understood that nothing herein shall preclude any proceedings brought by the Regional Director to enforce the terms of this ORDER, and that nothing herein constitutes, nor shall the Bank contend that it constitutes, a waiver of any right, power, or authority of any other representatives of the United States, departments or agencies

thereof, Department of Justice or any other representatives of the State of Utah or any other departments or agencies thereof, including any prosecutorial agency, to bring other actions deemed appropriate.

## REGIONAL DIRECTOR

18.     Whenever a provision of this ORDER shall require the Bank to submit a proposed letter, report, or other matter to the Regional Director for review, comment and/or non-objection, the Bank shall make such submission to the Regional Director at 20 Exchange Place, New York, New York 10005.

## ORDER EFFECTIVE

19.     The effective date of this ORDER shall be the date of issuance.

20.     The provisions of this ORDER shall be binding upon the Bank, its institution-affiliated parties, successors and assigns.

21.     The provisions of this ORDER shall remain effective and enforceable except to the extent that, and until such time as, any provision of this ORDER has been modified, terminated, or set aside in writing by the FDIC.


Pursuant to delegated authority.

Dated:  June 30, 2009


_____/s/_____
James C. Watkins
Deputy Regional Director
Division of Supervision
and Consumer Protection

11

FEDERAL DEPOSIT INSURANCE CORPORATION

WASHINGTON, D.C.

| | |
|---|---|
| In the Matter of<br><br>ADVANTA BANK CORP.<br>DRAPER, UTAH<br><br>(INSURED STATE NONMEMBER BANK) | )<br>)<br>)<br>)   CONSENT ORDER<br>)<br>)   FDIC-09-651B<br>)<br>) |

The Federal Deposit Insurance Corporation ("FDIC") is the appropriate Federal banking agency for Advanta Bank Corp, Draper, Utah ("Bank"), under 12 U.S.C. § 1813(q).

The Bank, by and through its duly elected and acting Board of Directors ("Board"), has executed a "Stipulation and Consent to the Issuance of a Consent Order" ("Stipulation"), dated November 18, 2009 that is accepted by the FDIC.  With the Stipulation, the Bank has consented, without admitting or denying any charges of unsafe or unsound banking practices or violations of law or regulation to the issuance of this CONSENT ORDER by the FDIC.

Having determined that the requirements for issuance of a CONSENT ORDER under 12 U.S.C. § 1818(b) and 12 U.S.C. § 1818(i)(2) have been satisfied, the FDIC hereby orders that:

## CONSENT ORDER

1.   Immediately upon the effective date of this CONSENT
ORDER, without the prior written consent of the Regional
Director of the FDIC's New York Regional Office ("Regional
Director"), the Bank shall not either directly or
indirectly enter into, participate in, or otherwise engage
in or allow any "extension of credit" to Advanta Corp.
and/or directly or indirectly enter into, participate in,
or otherwise engage in or allow any "covered transaction"
or "transaction covered" with  Advanta Corp. or with any
other "affiliate" of the Bank regardless of whether such
"extension of credit", "covered transaction" or
"transaction covered" would be prohibited, limited or
otherwise regulated by Sections 23A or 23B of the Federal
Reserve Act ("Sections 23A and 23B"), 12 U.S.C. §§ 371c and
371c-1.

2.   For purposes of this CONSENT ORDER, "extension of
credit" shall be defined as set forth at 12 C.F.R. § 215.3
and "affiliate," "covered transaction" and "transaction
covered" shall have the meanings set forth in Sections 23A
and 23B. Additionally, for purposes of this CONSENT ORDER,
any transaction by the Bank with any person or entity shall
be deemed to be a transaction with an "affiliate" of the
Bank if any of the proceeds of the transaction are used for

the benefit of, or transferred to such "affiliate" or the transaction in any manner directly or indirectly benefits the Bank "affiliate".

3.   As of the effective date of this ORDER, the Bank shall not enter into any contract or modification of an existing contract with Advanta Corp. or any other Bank affiliate, or increase the periodic payments under any existing contract with Advanta Corp. or any other Bank affiliate without submitting the new contract, modification, or information concerning the proposed increase in any existing contract with Advanta Corp. or any other Bank affiliate to the Regional Director for review and approval.

4.   All requests for prior written approval required under this CONSENT ORDER shall be received at least 30 days prior to the proposed "extension of credit", "covered transaction", "transaction covered", new contract, contract modification, or payment increase (collectively, "affiliate transactions") and shall contain, but not be limited to, an analysis of the impact the affiliate transactions would have on the Bank's capital position, cash flow, concentrations of credit, asset quality and allowance for loan and lease loss needs.

5.   This CONSENT ORDER shall supersede the provisions contained in Paragraphs 6 and 7 of the FDIC's ORDER TO CEASE AND DESIST, dated June 30, 2009, FDIC-09-266b, ("CEASE AND DESIST ORDER").   All other provisions of the CEASE AND DESIST ORDER shall remain effective and enforceable.

6.   It is expressly and clearly understood that if, at any time, the Regional Director shall deem it appropriate in fulfilling the responsibilities placed upon him or her under applicable law to undertake any further action affecting the Bank, nothing in this CONSENT ORDER shall in any way inhibit, estop, bar or otherwise prevent him or her from doing so, including, but not limited to, the imposition of civil money penalties.

7.   This CONSENT ORDER shall be binding upon the Bank, its successors and assigns, and all institution-affiliated parties of the Bank.   The provisions of this CONSENT ORDER shall remain effective and enforceable except to the extent that, and until such time as, any provision of this CONSENT ORDER shall have been modified, terminated, superseded, or set aside in writing by the FDIC.

8.   This CONSENT ORDER will become effective upon its issuance by the FDIC.

Pursuant to delegated authority.

Dated this 24th day of November, 2009.

```
                              /s/
              _____
              James C. Watkins
              Acting Regional Director
              New York Region
              Division of Supervision and
              Consumer Protection
              Federal Deposit Insurance
              Corporation
```