**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WESTERN PENNSYLVANIA ELECTRICAL EMPLOYEES PENSION FUND, Individually and on Behalf of All Others Similarly Situated,** | : | |
| **Plaintiff,** | : | |
| **v.** | : | **Civ. No. 09-4730** |
| **DENNIS ALTER, et al.,** | : | |
| **Defendants.** | : | |

---

| | | |
|---|---|---|
| **WILLIAM E. UNDERLAND and MARK SCHALLER, on behalf of themselves and all others similarly situated,** | : | |
| **Plaintiffs,** | : | **Civ. No. 10-3621** |
| **v.** | : | |
| **DENNIS ALTER, et al.,** | : | |
| **Defendants.** | : | |

**[PROPOSED] ORDER**

And now, this _____ day of ___________, 2013, upon consideration of Defendant Dennis Alter's Emergency Motion for Clarification, and any response or reply thereto, it is hereby **ORDERED** that the Motion is **GRANTED**.

Consistent with the Court's March 28, 2013 Order, which established procedures for protecting privileged, private, and/or confidential information on the Alter Hard Drive, the Court's September 9, 2013 Order (Civ. No. 09-4730, Doc. No. 165; Civ. No. 10-3621, Doc. No. 181) is modified to include the following provisions:

1. Mr. Alter continues to maintain an interest in protecting any privileged, private, and/or confidential information on the Alter Hard Drive.

2. The parties shall meet and confer by no later than September 13, 2013 regarding the appropriate procedures to address Mr. Alter's interest in protecting any privileged, private, and/or confidential information on the Alter Hard Drive, and Mr. Alter shall produce the Alter Hard Drive to LDiscovery within 3 business days of the parties reaching agreement on such procedures. If the parties cannot agree on procedures, this matter shall be referred to the Special Discovery Master for resolution.

__________________________________
Honorable Cynthia M. Rufe
United States District Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WESTERN PENNSYLVANIA ELECTRICAL EMPLOYEES PENSION FUND, Individually and on Behalf of All Others Similarly Situated,** | : | |
| **Plaintiff,** | : | |
| **v.** | : | **Civ. No. 09-4730** |
| **DENNIS ALTER, et al.,** | : | |
| **Defendants.** | : | |

| | | |
|---|---|---|
| **WILLIAM E. UNDERLAND and MARK SCHALLER, on behalf of themselves and all others similarly situated,** | : | |
| **Plaintiffs,** | : | **Civ. No. 10-3621** |
| **v.** | : | |
| **DENNIS ALTER, et al.,** | : | |
| **Defendants.** | : | |

**DEFENDANT DENNIS ALTER'S EMERGENCY MOTION FOR CLARIFICATION**

Mr. Alter moves to clarify the Court's order that was signed on September 6 and entered on September 9, 2013 (Civ. No. 09-4730, Doc. No. 165; Civ. No. 10-3621, Doc. No. 181) (the "September 9 Order"), which approved and adopted in substantial part the Special Master's Fifth Report and Amended Recommendation (Civ. No. 09-4730, Doc. No. 131; Civ. No. 10-3621, Doc. No. 170).

The Court has now issued two orders concerning the Alter Hard Drive, one on March 28, 2013, which affirms Mr. Alter's interest in protecting privileged, private and/or confidential

information, and another one entered on September 9, 2013. Mr. Alter requests that the Court, consistent with its March 28, 2013 Order, clarify the September 9 Order (1) to confirm that Mr. Alter continues to maintain an interest in protecting any privileged, private, and/or confidential information on the Alter Hard Drive; and (2) to require the parties to meet and confer prior to Mr. Alter providing the Alter Hard Drive to LDiscovery regarding appropriate procedures to address his interest in protecting any privileged, private, and/or confidential information on the Alter Hard Drive.

This issue first arose back in March 2013, when the Plaintiffs demanded that Mr. Alter produce the information that is contained on the hard drive. Mr. Alter argued, among other things, that requiring the wholesale production of the information would violate his privileges and raised privacy/confidentially concerns. As Mr. Alter explained in his March 28, 2013 letter to the Court, the Alter Hard Drive contains information that is privileged, private, and/or confidential. *See* Ex. A (March 28, 2013 letter from David J. Stanoch).

The Court accepted Mr. Alter's argument and ordered that prior to producing data on the Alter Hard Drive to the Plaintiffs, "Defendant Alter may complete . . . a privilege, confidentiality, and responsiveness review." *See* Ex. B (March 28, 2013 Order).

Pursuant to that March 28 order, defense counsel conducted such a review. Defense counsel produced responsive, non-privileged documents; withheld from production responsive, privileged documents (or redacted privileged information); and produced privilege logs identifying the privileged documents (or privileged portions of redacted documents). The privileged material included communications between Mr. Alter and counsel regarding litigation, compliance, compensation, taxation, and regulatory issues.

The privileged nature of this material must continue to be protected, as Mr. Alter's legal privileges are legitimate and protectable as a matter of law. *See* Fed. R. Civ. P. 26(b)(1) (parties may only obtain discovery of "nonprivileged matter that is relevant to any party's claim or defense"); *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) ("The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client."); *Haines v. Liggett Group Inc.*, 975 F.2d 81, 90 (3d Cir. 1992) (attorney-client communications are "worthy of maximum legal protection" and should be "zealously protected") (quotation marks and citation omitted).

Furthermore, the Alter Hard Drive contains sensitive personal information concerning Mr. Alter's family, children, divorce from his former wife, and personal financial information. Most, if not all, of this private material is irrelevant to these lawsuits and not responsive to Plaintiffs' discovery requests. It is imperative that the private, confidential nature of this material be maintained to avoid embarrassment or abuse.

Accordingly, Mr. Alter respectfully requests that the Court modify the September 9 Order to include the following provisions:

1. Mr. Alter continues to maintain an interest in protecting any privileged, private, and/or confidential information on the Alter Hard Drive;

2. The parties shall meet and confer by no later than September 13, 2013 regarding the appropriate procedures to address Mr. Alter's interest in protecting any privileged, private, and/or confidential information on the Alter Hard Drive, and Mr. Alter shall produce the Alter Hard Drive to LDiscovery within 3 business days of the parties reaching agreement on such

procedures. If the parties cannot agree on procedures, this matter shall be referred to the Special Discovery Master for resolution.

Mr. Alter seeks this relief on an emergency basis because the Court's September 9 Order calls for the delivery of the Alter Hard Drive to LDiscovery on or before September 13, 2013.

Dated: September 11, 2013

Respectfully submitted,

_s/ Steven B. Feirson_
Steven B. Feirson (PA 21357)
steven.feirson@dechert.com
Michael L. Kichline (PA 62293)
michael.kichline@dechert.com
David J. Stanoch (PA 91342)
david.stanoch@dechert.com
Alexander R. Bilus (PA 203680)
sandy.bilus@dechert.com
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
Tel: 215-994-4000
Fax: 215-994-2222

*Attorneys for Defendant Dennis Alter*

**CERTIFICATE OF SERVICE**

I certify that on September 11, 2013, I caused a true and correct copy of Defendant Dennis Alter's Emergency Motion for Clarification to be filed and served upon all parties and counsel of record via operation of the CM/ECF system for the United States District Court for the Eastern District of Pennsylvania.

*s/ Alexander R. Bilus*
Alexander R. Bilus
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
Tel: 215-994-4000
Fax: 215-994-2222

# Exhibit A

Dechert LLP

Cira Centre
2929 Arch Street
Philadelphia, PA 19104-2808
+1 215 994 4000 Main
+1 215 994 2222 Fax
www.dechert.com

**DAVID J. STANOCH**

david.stanoch@dechert.com
+1 215 994 2812 Direct
+1 215 655 2812 Fax

March 28, 2013

**VIA FACSIMILE & EMAIL**

The Honorable Cynthia M. Rufe
United States District Court
Eastern District of Pennsylvania
James A. Byrne U.S. Courthouse
601 Market Street, Suite 12614
Philadelphia, Pennsylvania 19106-1797

Re: *Underland, et al. v. Alter et al.*,
No. 2:10-cv-3621-CMR (E.D. Pa.) (the "1933 Act case");
*W. Pa. Elec. Emps. Pension Fund v. Alter, et al.*,
No. 2:09-cv-4730 (E.D. Pa.) (the "1934 Act case")

Dear Judge Rufe:

Per your direction during yesterday's 4 p.m. teleconference, I set forth herein Defendant Dennis Alter's limited objection to paragraph B.1 of the Special Master's Recommendation No. 3. Defendant objects to Recommendation No. 3 to the extent it directs the wholesale production of the hard drive containing the duplicative files in Mr. Alter's possession without any privilege, confidentiality, or responsiveness review.[1]

There are two very important issues at stake here. One is the sanctity of Mr. Alter's (not the company's) legal privileges. The second, and equally important, issue is the protection of Mr. Alter's acutely sensitive personal information. Mr. Alter spent decades of his life working at the company. His professional and personal lives sometimes intersected. He undoubtedly amassed irrelevant, sensitive personal materials during his time there. This is a driving reason why Mr. Alter sought to copy – not delete – materials when he left the company. It is neither remarkable

[1] We apologize that neither of the partners on this case were able to appear on the call yesterday. As I told your deputy clerk after counsel for another party informed me of her 2:32 p.m. email setting the teleconference (I was not copied on the original email), I was unable to contact either partner representing our client prior to the 4 p.m. teleconference. One of them was on an international flight, and the other is out of the country (plus, one of them does not appear to have been copied on the email either, and the other who was intended to be copied never received the email because his email address was mis-typed).

nor surprising that Mr. Alter, or anyone else in his position, would want to retain a copy of such materials. As a result, we believe the hard drive may contain a substantial amount of acutely sensitive personal information concerning family members, his divorce, and similar information. It is also possible that it contains items like his or his family's medical information, and his and his family's personal financial information.

## I. Production Without Any Privilege Review Violates *Mr. Alter's* Attorney-Client Privilege, and the Attorney Work Product Doctrine.

### A. The Hard Drive Contains Privileged Material.

There is no question whether the hard drive contains privileged material – it does. The hard drive apparently contains many years' worth of data, stretching back to the 1990's (well before the narrow 2006-2008 time period at issue in this litigation). Given this, it is very likely that the hard drive contains privileged material concerning multiple pending and threatened litigation involving not just Advanta Corp. itself, but, more significantly, litigation involving Mr. Alter as an individual defendant. For instance, as your Honor is aware, there is a cluster of litigation before you brought by the 1933 Act, 1934 Act, and ERISA Plaintiffs. In all of those cases, Mr. Alter is named as an individual defendant. There was an ongoing FDIC investigation. There was litigation relating to bankruptcy proceedings, in which Mr. Alter and others were asserting and defending against claims. It is also possible that the hard drive contains privileged material concerning Mr. Alter's personal divorce proceedings, and possibly other litigation or legal matters well outside the subject-matter or temporal scope of the cases before your Honor.

Plaintiffs' counsel is incorrect in arguing that Mr. Alter has no personal privileges to assert. To the extent Mr. Alter communicated with his own counsel, those communications are protected attorney-client communications, not the company's.[2] They may also constitute attorney work product. It does not matter that FTI may possess duplicates of these same communications. Just as Mr. Alter cannot waive the company's privilege on behalf of FTI, FTI cannot waive Mr. Alter's privilege. It also does not matter whether FTI has decided to waive its privileges or not – that is completely distinct from the question of Mr. Alter's own privileges.

---

[2] Mr. Alter's use of the company's systems does not vitiate the privilege. *See, e.g.*, *Brown-Criscuolo v. Wolfe*, 601 F. Supp. 2d 441, 450 (D. Conn. 2009) ("the Plaintiff did have a reasonable expectation of privacy in her emails at work, and the Court is not convinced by the Defendant's arguments to the contrary"). Plaintiffs have not established any record to the contrary.

In addition, Defense counsel have already applied a very modest set of privilege search terms over a copy of the hard drive (including, e.g., names of firms or attorneys representing Mr. Alter). Preliminary results suggest a few thousand potentially privileged documents reside on the hard drive. Thus, it is not mere conjecture whether the hard drive contains privileged material. Defense counsel are prepared to use their best efforts to review these potentially privileged documents and produce any non-privileged, responsive documents by or before the Special Master's April 25 deadline.

**B. The Attorney-Client Privilege and Attorney Work Product Doctrine Are Sacrosanct.**

Parties may only obtain discovery of "***nonprivileged*** matter that is relevant to a party's claim or defense." *See* Fed. R. Civ. P. 26(b)(1) (emphasis added). The attorney-client privilege is the oldest of the common-law privileges. *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 359 (3d Cir. 2007) (citation omitted); *see also id.* at 360 ("It is essential that parties be able to determine in advance with a high degree of certainty whether communications will be protected by the privilege") (citation omitted). Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). This privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client. *Id.*; *see also id.* at 393 ("An uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all."). "The need for the attorney-client privilege is at its height where the law with which the client seeks to comply is complicated and the penalties for noncompliance are great." *Wachtel v. Health Net, Inc.*, 482 F.3d 225, 237 (3d Cir. 2007); *see also Haines v. Liggett Group Inc.*, 975 F.2d 81, 90 (3d Cir. 1992) (attorney-client communications are "worthy of maximum legal protection" and should be "zealously protected") (internal quotations and citation omitted); *In re Metro. Metals, Inc.*, 206 B.R. 85, 87 (Bankr. M.D. Pa. 1997) ("An independent judiciary and a sacrosanct confidential relationship between lawyer and client are the bastions of an ordered liberty.") (citation omitted). The attorney-work product doctrine is equally important and safeguarded. *See Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947); *see also* Fed. R. Civ. P. 26(b)(3).

There is little question, therefore, that Mr. Alter's legal privileges are legitimate and protectable as a matter of law.[3]

---

[3] Additionally, a party seeking to obtain discovery of privileged matter must demonstrate its entitlement to it. *See, e.g., Sampson v. Sch. Dist. of Lancaster*, 262 F.R.D. 469, 478 (E.D. Pa. 2008) ("As the party challenging the privileged communication, Plaintiff bears the burden of

**C. A "Clawback" Process Does Not Countenance Ordering the Wholesale, Intentional Disclosure of Privileged Material.**

A clawback only guards against the ***inadvertent*** disclosure of privileged material. *See* Fed. R. Evid. 502(b) (entitled "Inadvertent Disclosure," and stating that the "disclosure does not operate as a waiver . . .if . . .the disclosure is inadvertent"). The Protective Order in this very litigation ascribes to this principle: "Consistent with Fed. R. Evid. 502, a Party or Non-party ***inadvertently*** disclosing a privileged document may, after promptly notifying the other Party or Parties, claw back the privileged document, such that the disclosure does not operate as a waiver of the privileged." First Am. To Stipulated Conf. & Protective Order (Doc. 113) at 2 (emphasis added). Even as to inadvertent disclosures, to guard against waiver, parties must still take "reasonable steps to prevent disclosure." Fed. R. Evid. 502(b)(2). This includes conducting a customary privilege review.

Plaintiffs cite absolutely no authority, and Defense counsel are aware of none, for the proposition that a clawback arrangement permits the blanket, deliberate production of privileged material without any privilege review. If this were so, then parties in discovery would never go through the process of reviewing and logging privileged documents. They would simply turn over everything – computers, devices, paper files, including privileged material – and just ask for certain privileged documents back on an ad hoc basis. The law does not contemplate this. It contemplates a measured review and catalogued withholding of privileged material, not its blanket production. *See* Fed. R. Civ. P. 26(b)(5) (party "must" describe basis for privilege assertion); *Manual for Complex Litigation (Fourth)* § 11.431 (privileged assertion "must" be explicitly made and described); *United States v. Rockwell Int'l*, 897 F.2d 1255, 1265 ("claims of attorney-client privilege must be asserted document by document, rather than as a single, blanket assertion").

---

showing that Defendants waived the privilege."); *Maldonado v. New Jersey ex rel. Admin. Office of Courts-Prob. Div.*, 225 F.R.D. 120, 132 (D.N.J. 2004) ("the party asserting waiver of work-product immunity, rather than the party asserting the work-product protection, has the burden of establishing waiver"); *see also* Fed. R. Civ. P. 26(b)(3)(A)(ii) (party must show substantial need and undue hardship to obtain non-mental impression attorney work-product). Plaintiffs have not made any showing at all, let alone one sufficient under Third Circuit law, to justify its receipt of Mr. Alter's attorney-client communications and his attorneys' work product.

**D. An Upfront Privilege Review Is Much More Efficient Than An Undefined "Clawback" Process.**

As stated yesterday, Defense counsel are ready to begin their privilege review right now, and will use their best efforts to complete that review on or before the Special Master's April 25 deadline. Completing the privilege review now, upfront, will avoid needless complications that a "clawback" process will entail.

Recommendation No. 3 is completely silent on how any "clawback" process will work. Presumably, it would work something like this: Defense counsel will produce a copy of the hard drive to Plaintiffs by April 25. At some later point – the recommendation does not say by when – Plaintiffs will inform Defense counsel of the search terms they intend to apply to the documents on the hard drive.[4] Special Recommendation No. 3 does not require Plaintiffs to identify the documents located by their search terms. So, Defense counsel will then need to re-run those same terms themselves. After that, Defense counsel would need to review all of those documents for privilege. Upon reviewing that indeterminate number of documents, Defense counsel would need to request that Plaintiffs return privileged documents. Plaintiffs may be able to challenge any privilege assertion without returning any particular document.[5]

It makes no sense for Defense counsel to hand over privileged documents to Plaintiffs now, and then review and clawback those same documents ***after*** April 25, when Defense counsel are ready to use their best efforts to complete a privilege review and produce all non-privileged, responsive documents ***on or before*** April 25. The alternative – produce everything, then review it for privilege, then claw it back – is flatly inconsistent with the law of privilege, and the just and

---

[4] This step alone reveals the potential unfairness of the contemplated "clawback" process. Plaintiffs are free to run any terms they choose, including terms suggestive of privilege, such as "attorney-client communication," "work product," and the names of Mr. Alter's personal attorneys. Defense counsel would not be able to do anything besides run those same terms themselves, review the documents hitting on those terms, and then request Plaintiffs to return any privileged documents. At a minimum, Defense counsel should be permitted to provide Plaintiffs with a list of privilege terms that Plaintiffs will not run over the documents, and Plaintiffs not review those documents until after Defense counsel has had the chance to do so, because Plaintiffs have an obligation themselves to not review material likely to be privileged. *See* ABA Model R. of Prof'l Conduct 4.4(b); Pa. R. of Prof'l Conduct 4.4(b) & Cmt. 2.

[5] Further, Recommendation No. 3 is silent on how Defense counsel should designate any documents as "Confidential" under the Protective Order, which does not contemplate the wholesale production of documents without any review.

efficient determination of this litigation. *See* Fed. R. Civ. P. 1; *see also In re Ford Motor Co.*, 110 F.3d 954, 963 (3d Cir. 1997) ("the limited assurance that the protected material will not be disclosed at trial 'will not suffice to ensure free and full communication by clients who do not rate highly a privilege that is operative only at the time of trial.'") (quoting *Chase Manhattan Bank, N.A. v. Turner & Newall, PLC*, 964 F.2d 159, 165 (2d Cir. 1992). The expedient of handing over the entire contents of the hard drive cannot trump Mr. Alter's legitimate privilege and privacy concerns. Time is not of the essence here. The Special Master afforded Defense counsel about a month to produce a copy of the hard drive. Plaintiffs do not object to this. As Defense counsel hope to accomplish a proper privilege review in that same time period, all of the complications of an undefined "clawback" process can be avoided, ***and*** Plaintiffs will ***still*** have all of the non-privileged, responsive documents on the hard drive by the same date on which they otherwise would just be receiving the hard drive's contents.

**E. There Is Absolutely No Prejudice to Plaintiffs By Allowing Mr. Alter to Conduct a Privilege Review; The Alternative Substantially Prejudices Mr. Alter.**

Plaintiffs have no entitlement to privileged documents as a matter of law. Thus, permitting Defense counsel to review for and withhold privileged documents does not prejudice Plaintiffs in any way, because they would never, and should never, receive them in the first place. Simply put, turning over privileged documents to Plaintiffs serves no legitimate purpose, because, by law, they cannot use such documents for any purpose.

On the other hand, the forced disclosure of privileged documents substantially prejudices Mr. Alter. In contrast to Plaintiffs' lack of entitlement to privileged information, Mr. Alter has a right to protect his privileged documents. Disclosure has potential waiver implications, compromises the sanctity of attorney-client relationship, and may reveal attorney litigation strategy and mental impressions to Plaintiffs. Further, the practical effect of disclosure is that the "cat's out of the bag" and the harm will have already been wrought, notwithstanding Mr. Alter's purported ability to "clawback" privileged document. *See, e.g., Chimie v. PPG Indus., Inc.*, 218 F.R.D. 416, 421 n.6 (D. Del. 2003) (refusing to "unring the bell" as to disclosed materials). Because of the severe, irreversible consequences of disclosure, the Third Circuit permits immediate review of orders compelling the disclosure of privileged documents. *See, e.g., In re Teleglobe Commc'ns Corp.*, 493 F.3d at 357-58 (reviewing and remanding interlocutory order compelling disclosure of privileged documents, and noting "[o]nce documents are disclosed, any dispute over their privileged status is effectively moot and unreviewable, as the very purpose of the privilege is frustrated by compelled disclosure."); *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 667-68 (3d Cir. 2003) (reviewing and reversing interlocutory order compelling disclosure of privileged documents); *In re Ford Motor Co.*, 110 F.3d at 963 (reviewing and remanding interlocutory order

compelling disclosure of privileged documents, noting "the limited assurance that the protected material will not be disclosed at trial will not suffice to ensure free and full communication by clients who do not rate highly a privilege that is operative only at the time of trial.") (internal quotations and citation omitted); *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 861-62 (3d Cir. 1994) (exercising mandamus jurisdiction, granting writ of mandamus, and reversing order compelling disclosure of privileged materials); *Haines*, 975 F.2d at 88-91 (exercising mandamus jurisdiction over review of work product issues, granting the writ, and reversing order precluding the application of privilege); *Sporck v. Peil*, 759 F.2d 312, 314-15 (3d Cir. 1985) (exercising mandamus jurisdiction over privilege and work product issues, grant the writ, and reversing order compelling disclosure of privileged materials).

The prejudice to Mr. Alter far outweighs the non-existent prejudice to Plaintiffs. Plaintiffs have repeatedly failed to explain or quantify how the time and money they spent negotiating with FTI could have avoided some lesser incremental cost related to FTI's production of Mr. Alter's files if Mr. Alter produced his duplicative set himself. FTI has access to ***all*** of the former Advanta employees' files. It is implausible that Plaintiffs would forego discovery of dozens and dozens of former Advanta employees' files in favor of receiving Mr. Alter's files only. In any event this "prejudice" is completely unrelated to the remedy they seek – the entire hard drive, including non-responsive and privileged documents that they neither originally sought, would have received, nor are otherwise entitled to receive.

At bottom, handing over privileged and non-responsive material to Plaintiffs is a punitive remedy not contemplated by the Federal Rules, *see generally* Fed. R. Civ. P. 37, will not accomplish any permissible end under the Federal Rules, and is not a result countenanced by the Third Circuit – especially in the absence of any record demonstrating bad faith, as is the case here. *See In re Teleglobe Commc'ns Corp.*, 493 F.3d at 386 (refusing to direct production of privileged material as discovery sanction).

**II. Turning Over the Entire Hard Drive Goes Beyond The Federal Rules and Violates Protections Against Disclosure.**

During yesterday's teleconference, the Special Master and Plaintiffs questioned why a responsiveness review would even be necessary. The answer is simple: Plaintiffs are only entitled to discover "nonprivileged matter ***that is relevant to any party's claim or defense***." Fed. R. Civ. P. 26(b)(1) (emphasis added); *see also id.* ("the court may order discovery of any matter relevant to the subject matter of the action."). The Court, in turn, has an obligation "to protect a party or person from annoyance, embarrassment, oppression, undue burden or expense." Fed. R. Civ. P. 26(c)(1); *see Graco, Inc. v. PMC Global, Inc.*, No. 08-1304 FLW, 2011 WL 1114233, at *44 (D.N.J. Mar. 24, 2011) (denying motion to compel where documents requested were "highly confidential" and information requested was "irrelevant [and] unlikely to lead to the discovery of

admissible evidence."); *see also Haas v. Kohl's Dept. Store, Inc.*, No. 08-CV-2507, 2009 WL 2030567 (E.D. Pa. July 7, 2009) (denying motion to compel production of irrelevant confidential information). In short, Plaintiffs have absolutely no right or entitlement to receive non-responsive documents that do not relate to the claims or defenses in this litigation.

The hard drive here undoubtedly contains non-responsive materials. Defense counsel have conducted a preliminary technical assessment of a copy of the hard drive. Aside from containing much less data than originally thought, the hard drive appears to contain extraneous, non-responsive files such as images, music files, and system (e.g., ".exe" and ".dll") files.[6] Notably, Plaintiffs asked FTI to exclude most or all of these very same files types from its own production.

It is also likely that the hard drive contains irrelevant, sensitive personal information concerning his family, his children, his divorce from his former wife, bank account numbers and the like, and conceivably his or his family's medical information, and his and his family's personal financial information. Some of this material, such as medical information, may even protected from disclosure by law, whether in the possession of Mr. Alter or FTI. Thoughtful review is necessary to sift these types of extraneous materials out of any production before all of them are blindly turned over to a litigation adversary.

None of these irrelevant, sensitive personal materials, and other kinds of materials like them, would ever be produced to Plaintiffs. Not only are they not discoverable, but Plaintiffs ***never asked for these types of materials***. It is unconscionable that Plaintiffs will receive and be able to rummage through these irrelevant sensitive personal materials when they never asked for them, have no right to ask for them, and the Court must protect against the disclosure of these exact types of materials.

Defense counsel will use their best efforts to apply Plaintiffs' search terms, review the resulting documents for responsiveness and privilege, and produce non-privileged, responsive documents on or before April 25.

***

[6] Defense counsel have since learned that the electronic imaging process that replicated electronic files onto the hard drive also captured unallocated space. Aside from this, culling out files types that Plaintiffs did not request (e.g., image, music, and system files) reduce the total volume of data by approximately 80%. Removal of non-responsive documents likely will reduce this even further.

For these reasons, Defense counsel respectfully object to Paragraph B.1 to the extent it requires Mr. Alter to produce privileged and non-responsive documents on the hard drive.

Respectfully,

David J. Stanoch

cc: All Counsel (via email)
David H. Marion (via email)
David Mullin (via email)
Christopher Harris (via email)

# Exhibit B

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WESTERN PENNSYLVANIA ELECTRICAL EMPLOYEES PENSION FUND,**<br><br>**v.**<br><br>**DENNIS ALTER, et al.** | : | **Civil Action No. 09-4730** |
| **In re ADVANTA CORP., ERISA LITIGATION** | : | **Civil Action No. 09-4974** |
| **WILLIAM UNDERLAND, et al.**<br><br>**v.**<br><br>**DENNIS ALTER, et al.** | : | **Civil Action No. 10-3621** |

FILED
MAR 28 2013
MICHAEL E. KUNZ, Clerk
By ________ Dep. Clerk

**ORDER**

AND NOW, this 28th day of March 2013, upon review of the Special Master's Third Report and Recommendation (attached), and after a telephone conference with the pertinent parties, and upon receipt and review of an objection from Dennis Alter (attached), and understanding that no other parties have objections to the Third Report and Recommendation, the Court adopts in major part the recommendations of the Special Master, modifying only Section B.1. Specifically, the Court hereby **ORDERS** as follows:

A. Stay Pending Mediation

1. Except as expressly set forth below, all motion practice and discovery proceedings shall be stayed until June 1, 2013.

2. No new interrogatories, documents requests or requests for admissions shall be served, and no depositions scheduled before June 1, 2013

Case 2:09-cv-04730-CMR Document 126 Filed 03/28/13 Page 2 of 3

except as set forth below.

3. All document production shall continue as previously scheduled, except as expressly set forth below.

In the interest of fairness, to enhance the prospects for successful mediation, and in recognition of the investments of time and expense already made, the documents -- particularly from FDIC and FTI -- shall be produced to Plaintiffs as soon as possible.

4. KPMG shall produce no later than April 25, 2013 all Advanta work papers for 2008 as requested by the '33 Act case plaintiffs. However, to reduce current expense, KPMG may reserve all claims of privilege, and work product without prejudice, notwithstanding that the documents will already have been produced.

B. Advanta Documents in the Possession of Defendant Alter

1. The 2.5 terabytes of documents recently disclosed to have been in Mr. Alter's possession shall be produced to plaintiffs on or before April 25, 2013. Defendant Alter may complete, within this deadline, a privilege, confidentiality, and responsiveness review.[1] Plaintiffs will share with Defendant's counsel the search terms they will apply to such documents.

2. Defendant Alter shall appear for his deposition on or before May 10, 2013. That deposition will be limited to four hours (exclusive of breaks, counsel discussions or objections, and recesses) and limited to matters relating to the existence, circumstances surrounding and contents of the documents referred to in B.1.

3. Any motion or proceedings relating to claims for sanctions in connection with B.1 and B.2 shall be deferred until June 1, 2013.

[1] This order should not be construed as a ruling on Defendant's interpretation of any relevant rules of law regarding privilege or confidentiality.

C. Market Efficiency Discovery

1. Plaintiffs have an expert on this subject whose report has been filed and whom defendants wish to depose. Defendants have retained no expert and have resisted plaintiffs' requests for any elaboration of the grounds on which they expect to contest the efficiency of the market for Advanta stock.

2. On or before April 15, 2013, Defendants shall consult their respective clients and inform plaintiffs in good faith in writing of all grounds known to Defendants for challenging the efficiency of the market for Advanta stock. Defendants will have the right to amend or supplement their grounds for challenge, if any, thereafter.

3. Upon Defendants' compliance with C2, Plaintiffs' shall produce their expert for deposition on or before May 10, 2013. That deposition will be limited to 4 hours (exclusive of breaks, counsel discussions or objections, and recesses) and limited to matters set forth in the expert's report and the defendants' grounds for challenge as per C.2.

It is so **ORDERED**.

**BY THE COURT:**

**Cynthia M. Rufe, J.**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WESTERN PENNSYLVANIA ELECTRICAL EMPLOYEES PENSION FUND, Individually and on behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>DENNIS ALTER, et al.,<br><br>Defendants. | Civil Action No. 2:09-cv-04730-CMR<br><br>CLASS ACTION |
| In re ADVANTA CORP., ERISA LITIGATION | Civil Action No. 2:09-cv-04974-CMR<br><br>CLASS ACTION |
| WILLIAM E. UNDERLAND, et al., on behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>DENNIS ALTER, et al.,<br><br>Defendants. | Civil Action No. 2:10-cv-03621-CMR<br><br>CLASS ACTION |

**SPECIAL MASTER'S REPORT AND RECOMMENDED ORDER #3**

The Special Master has reviewed voluminous materials submitted by counsel for all parties in these cases and conducted a conference call on March 21, 2013 during which all counsel were invited to express their positions and respond to questions and suggestions from the Special Master dealing with the following subjects:

1) The Defendants' request that all proceedings, including discovery, be stayed until completion of mediation proceedings seeking a global settlement, scheduled to be held on May 23-24;

2) The plaintiffs' request that defendant Dennis Alter appear for a deposition limited by time and subject matter, related to the 2.5 terabytes of Advanta documents recently disclosed to be in Mr. Alter's possession after earlier representations to the contrary;

3) The plaintiffs' request for additional responses from defendants on market efficiency, and the defendants' request that plaintiffs' expert witness on that subject be deposed without any prior disclosures from defendants.

Set forth below are my recommendations for resolving the above disputes. I have carefully considered all arguments put forward on each issue, but in order not to unduly prolong this report, I am only mentioning a few important considerations justifying my recommendations. (All dates herein are 2013.)

A. <u>Stay Pending Mediation</u>

1. Except as expressly set forth below, all motion practice and discovery proceedings shall be stayed until June 1.

2. No new interrogatories, documents requests or requests for admissions shall be served, and no depositions scheduled before June 1, except as set forth below.

3. All document production shall continue as previously scheduled, except as expressly set for below.

The Special Master notes that plaintiffs had agreed early on to Judge Rufe's suggestion for mediation, but defendants then said it was premature. Now in the interest of fairness, to

Case 2:09-cv-04730-CMR Document 126-1 Filed 03/28/13 Page 3 of 5

enhance the prospects for successful mediation, and in recognition of the investments of time and expense already made, the documents -- particularly from FDIC and FT1 -- shall be produced to plaintiffs as soon as possible.

4. KPMG shall produce no later than April 25 all Advanta work papers for 2008 as requested by the '33 Act case plaintiffs. However, to reduce current expense, KPMG may reserve all claims of privilege, and work product without prejudice, notwithstanding that the documents will already have been produced.

B. Advanta Documents in the Possession of Defendant Alter

1. The 2.5 terabytes of documents recently disclosed to have been in Mr. Alter's possession shall be produced to plaintiffs on or before April 25. Defendant may reserve all claims of privilege and work product with respect to such documents without prejudice, notwithstanding that the documents will have already been produced. Plaintiffs will share with defendant's counsel the search terms they will apply to such documents.

2. Defendant Alter shall appear for his deposition on or before May 10. That deposition will be limited to four hours (exclusive of breaks, counsel discussions or objections, and recesses) and limited to matters relating to the existence, circumstances surrounding and contents of the documents referred to in ¶B.1.

3. Any motion or proceedings relating to claims for sanctions in connection with ¶¶'s B.1 and 2 shall be deferred until June 1.

C. Market Efficiency Discovery

1. Plaintiffs have an expert on this subject whose report has been filed and whom defendants wish to depose. Defendants have retained no expert and have resisted plaintiffs' requests for any elaboration of the grounds on which they expect to contest

the efficiency of the market for Advanta stock.

2. On or before April 15, defendants shall consult their respective clients and inform plaintiffs in good faith in writing of all grounds known to defendants for challenging the efficiency of the market for Advanta stock. Defendants will have the right to amend or supplement their grounds for challenge, if any, thereafter.

3. Upon defendants' compliance with ¶C.2., plaintiffs' shall produce their expert for deposition on or before May 10. That deposition will be limited to 4 hours (exclusive of breaks, counsel discussions or objections, and recesses) and limited to matters set forth in the expert's report and the defendants' grounds for challenge as per ¶C.2.

/s/ David H. Marion
______________________________
DAVID H. MARION

Dated: March 25, 2013

* * *

**ORDER**

It is so ORDERED.

Dated: ______________________________

______________________________
Honorable Cynthia M. Rufe
United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that on March 25, 2013, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court for the Eastern District of Pennsylvania using the CM/ECF system. Notice of this filing will be sent to all parties by operation of the court's electronic filing system. Parties may access this filing through the Court's CM/ECF system.

/s/ David H. Marion

DAVID H. MARION

ARCHER & GREINER, P.C.
One Liberty Place
Thirty-Second Floor
1650 Market Street
Philadelphia, Pennsylvania 19103
(215) 963-3300
(215) 963-9999 (fax)
dmarion@archerlaw.com

9563804v1

Dechert LLP

Cira Centre
2929 Arch Street
Philadelphia, PA 19104-2808
+1 215 994 4000 Main
+1 215 994 2222 Fax
www.dechert.com

DAVID J. STANOCH

david.stanoch@dechert.com
+1 215 994 2812 Direct
+1 215 655 2812 Fax

March 28, 2013

**VIA FACSIMILE & EMAIL**

The Honorable Cynthia M. Rufe
United States District Court
Eastern District of Pennsylvania
James A. Byrne U.S. Courthouse
601 Market Street, Suite 12614
Philadelphia, Pennsylvania 19106-1797

Re: *Underland, et al. v. Alter et al.*,
No. 2:10-cv-3621-CMR (E.D. Pa.) (the "1933 Act case");
*W. Pa. Elec. Emps. Pension Fund v. Alter, et al.*,
No. 2:09-cv-4730 (E.D. Pa.) (the "1934 Act case")

Dear Judge Rufe:

Per your direction during yesterday's 4 p.m. teleconference, I set forth herein Defendant Dennis Alter's limited objection to paragraph B.1 of the Special Master's Recommendation No. 3. Defendant objects to Recommendation No. 3 to the extent it directs the wholesale production of the hard drive containing the duplicative files in Mr. Alter's possession without any privilege, confidentiality, or responsiveness review.[1]

There are two very important issues at stake here. One is the sanctity of Mr. Alter's (not the company's) legal privileges. The second, and equally important, issue is the protection of Mr. Alter's acutely sensitive personal information. Mr. Alter spent decades of his life working at the company. His professional and personal lives sometimes intersected. He undoubtedly amassed irrelevant, sensitive personal materials during his time there. This is a driving reason why Mr. Alter sought to copy – not delete – materials when he left the company. It is neither remarkable

[1] We apologize that neither of the partners on this case were able to appear on the call yesterday. As I told your deputy clerk after counsel for another party informed me of her 2:32 p.m. email setting the teleconference (I was not copied on the original email), I was unable to contact either partner representing our client prior to the 4 p.m. teleconference. One of them was on an international flight, and the other is out of the country (plus, one of them does not appear to have been copied on the email either, and the other who was intended to be copied never received the email because his email address was mis-typed).

nor surprising that Mr. Alter, or anyone else in his position, would want to retain a copy of such materials. As a result, we believe the hard drive may contain a substantial amount of acutely sensitive personal information concerning family members, his divorce, and similar information. It is also possible that it contains items like his or his family's medical information, and his and his family's personal financial information.

## I. Production Without Any Privilege Review Violates *Mr. Alter's* Attorney-Client Privilege, and the Attorney Work Product Doctrine.

### A. The Hard Drive Contains Privileged Material.

There is no question whether the hard drive contains privileged material – it does. The hard drive apparently contains many years' worth of data, stretching back to the 1990's (well before the narrow 2006-2008 time period at issue in this litigation). Given this, it is very likely that the hard drive contains privileged material concerning multiple pending and threatened litigation involving not just Advanta Corp. itself, but, more significantly, litigation involving Mr. Alter as an individual defendant. For instance, as your Honor is aware, there is a cluster of litigation before you brought by the 1933 Act, 1934 Act, and ERISA Plaintiffs. In all of those cases, Mr. Alter is named as an individual defendant. There was an ongoing FDIC investigation. There was litigation relating to bankruptcy proceedings, in which Mr. Alter and others were asserting and defending against claims. It is also possible that the hard drive contains privileged material concerning Mr. Alter's personal divorce proceedings, and possibly other litigation or legal matters well outside the subject-matter or temporal scope of the cases before your Honor.

Plaintiffs' counsel is incorrect in arguing that Mr. Alter has no personal privileges to assert. To the extent Mr. Alter communicated with his own counsel, those communications are protected attorney-client communications, not the company's.[2] They may also constitute attorney work product. It does not matter that FTI may possess duplicates of these same communications. Just as Mr. Alter cannot waive the company's privilege on behalf of FTI, FTI cannot waive Mr. Alter's privilege. It also does not matter whether FTI has decided to waive its privileges or not – that is completely distinct from the question of Mr. Alter's own privileges.

---

[2] Mr. Alter's use of the company's systems does not vitiate the privilege. *See, e.g.*, *Brown-Criscuolo v. Wolfe*, 601 F. Supp. 2d 441, 450 (D. Conn. 2009) ("the Plaintiff did have a reasonable expectation of privacy in her emails at work, and the Court is not convinced by the Defendant's arguments to the contrary"). Plaintiffs have not established any record to the contrary.

In addition, Defense counsel have already applied a very modest set of privilege search terms over a copy of the hard drive (including, e.g., names of firms or attorneys representing Mr. Alter). Preliminary results suggest a few thousand potentially privileged documents reside on the hard drive. Thus, it is not mere conjecture whether the hard drive contains privileged material. Defense counsel are prepared to use their best efforts to review these potentially privileged documents and produce any non-privileged, responsive documents by or before the Special Master's April 25 deadline.

**B. The Attorney-Client Privilege and Attorney Work Product Doctrine Are Sacrosanct.**

Parties may only obtain discovery of "***nonprivileged*** matter that is relevant to a party's claim or defense." *See* Fed. R. Civ. P. 26(b)(1) (emphasis added). The attorney-client privilege is the oldest of the common-law privileges. *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 359 (3d Cir. 2007) (citation omitted); *see also id.* at 360 ("It is essential that parties be able to determine in advance with a high degree of certainty whether communications will be protected by the privilege") (citation omitted). Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). This privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client. *Id.*; *see also id.* at 393 ("An uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all."). "The need for the attorney-client privilege is at its height where the law with which the client seeks to comply is complicated and the penalties for noncompliance are great." *Wachtel v. Health Net, Inc.*, 482 F.3d 225, 237 (3d Cir. 2007); *see also Haines v. Liggett Group Inc.*, 975 F.2d 81, 90 (3d Cir. 1992) (attorney-client communications are "worthy of maximum legal protection" and should be "zealously protected") (internal quotations and citation omitted); *In re Metro. Metals, Inc.*, 206 B.R. 85, 87 (Bankr. M.D. Pa. 1997) ("An independent judiciary and a sacrosanct confidential relationship between lawyer and client are the bastions of an ordered liberty.") (citation omitted). The attorney-work product doctrine is equally important and safeguarded. *See Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947); *see also* Fed. R. Civ. P. 26(b)(3).

There is little question, therefore, that Mr. Alter's legal privileges are legitimate and protectable as a matter of law.[3]

---

[3] Additionally, a party seeking to obtain discovery of privileged matter must demonstrate its entitlement to it. *See, e.g.*, *Sampson v. Sch. Dist. of Lancaster*, 262 F.R.D. 469, 478 (E.D. Pa. 2008) ("As the party challenging the privileged communication, Plaintiff bears the burden of

**C. A "Clawback" Process Does Not Countenance Ordering the Wholesale, Intentional Disclosure of Privileged Material.**

A clawback only guards against the ***inadvertent*** disclosure of privileged material. *See* Fed. R. Evid. 502(b) (entitled "Inadvertent Disclosure," and stating that the "disclosure does not operate as a waiver . . .if . . .the disclosure is inadvertent"). The Protective Order in this very litigation ascribes to this principle: "Consistent with Fed. R. Evid. 502, a Party or Non-party ***inadvertently*** disclosing a privileged document may, after promptly notifying the other Party or Parties, claw back the privileged document, such that the disclosure does not operate as a waiver of the privileged." First Am. To Stipulated Conf. & Protective Order (Doc. 113) at 2 (emphasis added). Even as to inadvertent disclosures, to guard against waiver, parties must still take "reasonable steps to prevent disclosure." Fed. R. Evid. 502(b)(2). This includes conducting a customary privilege review.

Plaintiffs cite absolutely no authority, and Defense counsel are aware of none, for the proposition that a clawback arrangement permits the blanket, deliberate production of privileged material without any privilege review. If this were so, then parties in discovery would never go through the process of reviewing and logging privileged documents. They would simply turn over everything – computers, devices, paper files, including privileged material – and just ask for certain privileged documents back on an ad hoc basis. The law does not contemplate this. It contemplates a measured review and catalogued withholding of privileged material, not its blanket production. *See* Fed. R. Civ. P. 26(b)(5) (party "must" describe basis for privilege assertion); *Manual for Complex Litigation (Fourth)* § 11.431 (privileged assertion "must" be explicitly made and described); *United States v. Rockwell Int'l*, 897 F.2d 1255, 1265 ("claims of attorney-client privilege must be asserted document by document, rather than as a single, blanket assertion").

---

showing that Defendants waived the privilege."); *Maldonado v. New Jersey ex rel. Admin. Office of Courts-Prob. Div.*, 225 F.R.D. 120, 132 (D.N.J. 2004) ("the party asserting waiver of work-product immunity, rather than the party asserting the work-product protection, has the burden of establishing waiver"); *see also* Fed. R. Civ. P. 26(b)(3)(A)(ii) (party must show substantial need and undue hardship to obtain non-mental impression attorney work-product). Plaintiffs have not made any showing at all, let alone one sufficient under Third Circuit law, to justify its receipt of Mr. Alter's attorney-client communications and his attorneys' work product.

**D. An Upfront Privilege Review Is Much More Efficient Than An Undefined "Clawback" Process.**

As stated yesterday, Defense counsel are ready to begin their privilege review right now, and will use their best efforts to complete that review on or before the Special Master's April 25 deadline. Completing the privilege review now, upfront, will avoid needless complications that a "clawback" process will entail.

Recommendation No. 3 is completely silent on how any "clawback" process will work. Presumably, it would work something like this: Defense counsel will produce a copy of the hard drive to Plaintiffs by April 25. At some later point – the recommendation does not say by when – Plaintiffs will inform Defense counsel of the search terms they intend to apply to the documents on the hard drive.[4] Special Recommendation No. 3 does not require Plaintiffs to identify the documents located by their search terms. So, Defense counsel will then need to re-run those same terms themselves. After that, Defense counsel would need to review all of those documents for privilege. Upon reviewing that indeterminate number of documents, Defense counsel would need to request that Plaintiffs return privileged documents. Plaintiffs may be able to challenge any privilege assertion without returning any particular document.[5]

It makes no sense for Defense counsel to hand over privileged documents to Plaintiffs now, and then review and clawback those same documents *after* April 25, when Defense counsel are ready to use their best efforts to complete a privilege review and produce all non-privileged, responsive documents *on or before* April 25. The alternative – produce everything, then review it for privilege, then claw it back – is flatly inconsistent with the law of privilege, and the just and

---

[4] This step alone reveals the potential unfairness of the contemplated "clawback" process. Plaintiffs are free to run any terms they choose, including terms suggestive of privilege, such as "attorney-client communication," "work product," and the names of Mr. Alter's personal attorneys. Defense counsel would not be able to do anything besides run those same terms themselves, review the documents hitting on those terms, and then request Plaintiffs to return any privileged documents. At a minimum, Defense counsel should be permitted to provide Plaintiffs with a list of privilege terms that Plaintiffs will not run over the documents, and Plaintiffs not review those documents until after Defense counsel has had the chance to do so, because Plaintiffs have an obligation themselves to not review material likely to be privileged. *See* ABA Model R. of Prof'l Conduct 4.4(b); Pa. R. of Prof'l Conduct 4.4(b) & Cmt. 2.

[5] Further, Recommendation No. 3 is silent on how Defense counsel should designate any documents as "Confidential" under the Protective Order, which does not contemplate the wholesale production of documents without any review.

efficient determination of this litigation. *See* Fed. R. Civ. P. 1; *see also In re Ford Motor Co.*, 110 F.3d 954, 963 (3d Cir. 1997) ("the limited assurance that the protected material will not be disclosed at trial 'will not suffice to ensure free and full communication by clients who do not rate highly a privilege that is operative only at the time of trial.'") (quoting *Chase Manhattan Bank, N.A. v. Turner & Newall, PLC*, 964 F.2d 159, 165 (2d Cir. 1992). The expedient of handing over the entire contents of the hard drive cannot trump Mr. Alter's legitimate privilege and privacy concerns. Time is not of the essence here. The Special Master afforded Defense counsel about a month to produce a copy of the hard drive. Plaintiffs do not object to this. As Defense counsel hope to accomplish a proper privilege review in that same time period, all of the complications of an undefined "clawback" process can be avoided, ***and*** Plaintiffs will ***still*** have all of the non-privileged, responsive documents on the hard drive by the same date on which they otherwise would just be receiving the hard drive's contents.

**E. There Is Absolutely No Prejudice to Plaintiffs By Allowing Mr. Alter to Conduct a Privilege Review; The Alternative Substantially Prejudices Mr. Alter.**

Plaintiffs have no entitlement to privileged documents as a matter of law. Thus, permitting Defense counsel to review for and withhold privileged documents does not prejudice Plaintiffs in any way, because they would never, and should never, receive them in the first place. Simply put, turning over privileged documents to Plaintiffs serves no legitimate purpose, because, by law, they cannot use such documents for any purpose.

On the other hand, the forced disclosure of privileged documents substantially prejudices Mr. Alter. In contrast to Plaintiffs' lack of entitlement to privileged information, Mr. Alter has a right to protect his privileged documents. Disclosure has potential waiver implications, compromises the sanctity of attorney-client relationship, and may reveal attorney litigation strategy and mental impressions to Plaintiffs. Further, the practical effect of disclosure is that the "cat's out of the bag" and the harm will have already been wrought, notwithstanding Mr. Alter's purported ability to "clawback" privileged document. *See, e.g.*, *Chimie v. PPG Indus., Inc.*, 218 F.R.D. 416, 421 n.6 (D. Del. 2003) (refusing to "unring the bell" as to disclosed materials). Because of the severe, irreversible consequences of disclosure, the Third Circuit permits immediate review of orders compelling the disclosure of privileged documents. *See, e.g.*, *In re Teleglobe Commc'ns Corp.*, 493 F.3d at 357-58 (reviewing and remanding interlocutory order compelling disclosure of privileged documents, and noting "[o]nce documents are disclosed, any dispute over their privileged status is effectively moot and unreviewable, as the very purpose of the privilege is frustrated by compelled disclosure."); *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 667-68 (3d Cir. 2003) (reviewing and reversing interlocutory order compelling disclosure of privileged documents); *In re Ford Motor Co.*, 110 F.3d at 963 (reviewing and remanding interlocutory order

compelling disclosure of privileged documents, noting "the limited assurance that the protected material will not be disclosed at trial will not suffice to ensure free and full communication by clients who do not rate highly a privilege that is operative only at the time of trial.") (internal quotations and citation omitted); *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 861-62 (3d Cir. 1994) (exercising mandamus jurisdiction, granting writ of mandamus, and reversing order compelling disclosure of privileged materials); *Haines*, 975 F.2d at 88-91 (exercising mandamus jurisdiction over review of work product issues, granting the writ, and reversing order precluding the application of privilege); *Sporck v. Peil*, 759 F.2d 312, 314-15 (3d Cir. 1985) (exercising mandamus jurisdiction over privilege and work product issues, grant the writ, and reversing order compelling disclosure of privileged materials).

The prejudice to Mr. Alter far outweighs the non-existent prejudice to Plaintiffs. Plaintiffs have repeatedly failed to explain or quantify how the time and money they spent negotiating with FTI could have avoided some lesser incremental cost related to FTI's production of Mr. Alter's files if Mr. Alter produced his duplicative set himself. FTI has access to ***all*** of the former Advanta employees' files. It is implausible that Plaintiffs would forego discovery of dozens and dozens of former Advanta employees' files in favor of receiving Mr. Alter's files only. In any event this "prejudice" is completely unrelated to the remedy they seek – the entire hard drive, including non-responsive and privileged documents that they neither originally sought, would have received, nor are otherwise entitled to receive.

At bottom, handing over privileged and non-responsive material to Plaintiffs is a punitive remedy not contemplated by the Federal Rules, *see generally* Fed. R. Civ. P. 37, will not accomplish any permissible end under the Federal Rules, and is not a result countenanced by the Third Circuit – especially in the absence of any record demonstrating bad faith, as is the case here. *See In re Teleglobe Commc'ns Corp.*, 493 F.3d at 386 (refusing to direct production of privileged material as discovery sanction).

**II. Turning Over the Entire Hard Drive Goes Beyond The Federal Rules and Violates Protections Against Disclosure.**

During yesterday's teleconference, the Special Master and Plaintiffs questioned why a responsiveness review would even be necessary. The answer is simple: Plaintiffs are only entitled to discover "nonprivileged matter ***that is relevant to any party's claim or defense***." Fed. R. Civ. P. 26(b)(1) (emphasis added); *see also id.* ("the court may order discovery of any matter relevant to the subject matter of the action."). The Court, in turn, has an obligation "to protect a party or person from annoyance, embarrassment, oppression, undue burden or expense." Fed. R. Civ. P. 26(c)(1); *see Graco, Inc. v. PMC Global, Inc.*, No. 08-1304 FLW, 2011 WL 1114233, at *44 (D.N.J. Mar. 24, 2011) (denying motion to compel where documents requested were "highly confidential" and information requested was "irrelevant [and] unlikely to lead to the discovery of

admissible evidence."); *see also Haas v. Kohl's Dept. Store, Inc.*, No. 08-CV-2507, 2009 WL 2030567 (E.D. Pa. July 7, 2009) (denying motion to compel production of irrelevant confidential information). In short, Plaintiffs have absolutely no right or entitlement to receive non-responsive documents that do not relate to the claims or defenses in this litigation.

The hard drive here undoubtedly contains non-responsive materials. Defense counsel have conducted a preliminary technical assessment of a copy of the hard drive. Aside from containing much less data than originally thought, the hard drive appears to contain extraneous, non-responsive files such as images, music files, and system (e.g., ".exe" and ".dll") files.[6] Notably, Plaintiffs asked FTI to exclude most or all of these very same files types from its own production.

It is also likely that the hard drive contains irrelevant, sensitive personal information concerning his family, his children, his divorce from his former wife, bank account numbers and the like, and conceivably his or his family's medical information, and his and his family's personal financial information. Some of this material, such as medical information, may even protected from disclosure by law, whether in the possession of Mr. Alter or FTI. Thoughtful review is necessary to sift these types of extraneous materials out of any production before all of them are blindly turned over to a litigation adversary.

None of these irrelevant, sensitive personal materials, and other kinds of materials like them, would ever be produced to Plaintiffs. Not only are they not discoverable, but Plaintiffs ***never asked for these types of materials***. It is unconscionable that Plaintiffs will receive and be able to rummage through these irrelevant sensitive personal materials when they never asked for them, have no right to ask for them, and the Court must protect against the disclosure of these exact types of materials.

Defense counsel will use their best efforts to apply Plaintiffs' search terms, review the resulting documents for responsiveness and privilege, and produce non-privileged, responsive documents on or before April 25.

***

---

[6] Defense counsel have since learned that the electronic imaging process that replicated electronic files onto the hard drive also captured unallocated space. Aside from this, culling out files types that Plaintiffs did not request (e.g., image, music, and system files) reduce the total volume of data by approximately 80%. Removal of non-responsive documents likely will reduce this even further.

Dechert LLP



For these reasons, Defense counsel respectfully object to Paragraph B.1 to the extent it requires Mr. Alter to produce privileged and non-responsive documents on the hard drive.

Respectfully,

David J. Stanoch

If you remove this requirement I think you can sign the R + R

cc: All Counsel (via email)
David H. Marion (via email)
David Mullin (via email)
Christopher Harris (via email)

Dechert LLP

Cira Centre
2929 Arch Street
Philadelphia, PA 19104-2808
+1 215 994 4000 Main
+1 215 994 2222 Fax
www.dechert.com

## FAX TRANSMISSION SHEET

**DATE** March 28, 2013

**TO** The Honorable Cynthia M. Rufe
United States District Court
Eastern District of Pennsylvania
James A. Byrne U.S. Courthouse
601 Market Street, Suite 12614
Philadelphia, Pennsylvania 19106-1797

**TEL** (267) 299-7490
**FAX** (267) 299-5077

**FROM** David J. Stanoch

**EMAIL** david.stanoch@dechert.com

**TEL** +1 215 994 2812
**FAX** +1 215 655 2812

**TOTAL NUMBER OF PAGES, INCLUDING THIS COVER SHEET** 10

**IF ALL PAGES ARE NOT RECEIVED, PLEASE CALL +1 215 994 4000**

**OPERATOR**

**TIME OF TRANSMISSION**

**CONFIDENTIALITY NOTE**
The information contained in this facsimile message is legally privileged and confidential information intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that you should not further disseminate, distribute or copy this message. In addition, if you have received this message in error, please notify us immediately by collect telephone call and return the original message to us at the above address via the United States Postal Service. Thank you.

## MESSAGE

*Underland, et al. v. Alter et al.*, No. 2:10-cv-3621-CMR (E.D. Pa.) (the "1933 Act case"); *W. Pa. Elec. Emps. Pension Fund v. Alter, et al.*, No. 2:09-cv-4730 (E.D. Pa.) (the "1934 Act case")

AJAMIE LLP

HOUSTON
711 Louisiana, Suite 2150
Houston, Texas 77002

NEW YORK
460 Park Avenue - 21st Floor
New York, New York 10022

713 860 1600 telephone
www.ajamie.com

John S. 'Jack' Edwards, Jr.
jedwards@ajamie.com

0547.001

March 28, 2013

**BY FACSIMILE (267) 299-5077**

The Honorable Cynthia M. Rufe
United States District Court
Eastern District of Pennsylvania
James A. Byrne U.S. Courthouse
601 Market Street, Suite 12614
Philadelphia, PA 19106-1797

Re: *W. Pa. Elec. Employees Pension Fund v. Alter, et al.*, Civil Action No. 09-CV-04730-CMR (E.D. Pa.) ("1934 Act Case"); *Underland et al. v. Alter et al.*, Civil Action No. 10-3621-CMR (E.D. Pa.) ("1933 Act Case")

Dear Judge Rufe:

On yesterday's call with counsel for all parties in the above-referenced cases, you requested that counsel for Defendant David B. Weinstock notify the Court by noon today whether Mr. Weinstock opposes any of the provisions in Special Discovery Master David Marion's Report and Recommended Order No. 3, which was filed on March 25, 2013. At the time, I told you that Mr. Weinstock had not yet decided whether to oppose ¶ C.2 of the recommended order.

This letter is to notify you that Mr. Weinstock does not oppose any of the provisions in Mr. Marion's Report and Recommended Order No. 3.

If you have any questions, please do not hesitate to contact me.

Sincerely,

Jack Edwards

JSE/jwc

30484

cc: David W. Engstrom *By Email*
LAW OFFICE OF DAVID W. ENGSTROM
4000 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
dwe@dwengstromlaw.com
*Counsel for Defendant David B. Weinstock*

Steven B. Feirson *By Email*
Michael L. Kichline
Alexander R. Bilus
David J. Stanoch
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 10104
steven.feirson@dechert.com
michael.kichline@dechert.com
sandy.bilus@dechert.com
david.stanoch@dechert.com
*Counsel for Defendants Dennis Alter, Philip M. Browne & William A. Rosoff in the 1934 Act Case; and Counsel for Defendants Dana Becker Dunn, Dennis Alter, Philip M. Browne, Ronald Lubner, William A. Rosoff, Max Botel, Thomas Costello, Olaf Olaffson & Michael Stolper in the 1933 Act Case*

Geoffrey A. Kahn *By Email*
Edward D. Rogers
Anne Graber Blazek
Ruth S. Uselton
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
kahn@ballardspahr.com
rogers@ballardspahr.com
blazeka@ballardspahr.com
useltonr@ballardspahr.com
*Counsel for Defendant KPMG LLP in the 1933 Act Case*

Douglas R. Britton *By Email*
James A. Caputo
Ashley M. Price
ROBBINS GELLER RUDMAN & DOWD LLP
655 W. Broadway, Suite 1900
San Diego, CA 92101
dougb@rgrdlaw.com
jimc@rgrdlaw.com
aprice@rgrdlaw.com
*Counsel for Plaintiff Western Pennsylvania Electrical Employees Pension Fund in the 1934 Act Case*

Deborah R. Gross *By Email*
LAW OFFICES OF BERNARD M. GROSS, PC
100 Penn Sq., East
John Wanamaker Building, Suite 450
Philadelphia, PA 19107
debbie@bernardmgross.com
*Counsel for Plaintiff Western Pennsylvania Electrical Employees Pension Fund in the 1934 Act Case*

Deborah Clark-Weintraub *By Email*
Thomas L. Laughlin IV
SCOTT + SCOTT LLP
The Chrysler Building
405 Lexington Avenue, 40th Floor
New York, NY 10174
tlaughlin@scott-scott.com
dweintraub@scott-scott.com
*Counsel for Plaintiffs William E. Underland & Mark Schaller in the 1933 Act Case*

Geoffrey M. Johnson *By Email*
SCOTT + SCOTT LLP
12434 Cedar Road, Suite 12
Cleveland Heights, OH 44106
gjohnson@scott-scott.com
*Counsel for Plaintiffs William E. Underland & Mark Schaller in the 1933 Act Case*

Anne L. Box
John Jasnoch
SCOTT + SCOTT LLP
707 Broadway
Suite 1000
San Diego, CA 92101
abox@scott-scott.com
jjasnoch@scott-scott.com
*Counsel for Plaintiffs William E. Underland & Mark Schaller in the 1933 Act Case*

*By Email*

Robert B. Weiser
Brett D. Stecker
Christopher L. Nelson
Jeffrey J. Ciarlanto
THE WEISER LAW FIRM PC
22 Cassatt Avenue
Berwyn, PA 19312
rw@weiserlawfirm.com
bds@weiserlawfirm.com
cln@weiserlawfirm.com
jjc@weiserlawfirm.com
*Counsel for Plaintiffs William E. Underland & Mark Schaller in the 1933 Act Case*

*By Email*

David H. Marion
ARCHER & GREINER P.C.
1 Liberty Place, 32nd Floor
1650 Market Street
Philadelphia, PA 19103-7393
dmarion@archerlaw.com
*Special Discovery Master*

*By Email*

AJAMIE LLP

Pennzoil Place - South Tower
711 Louisiana, Suite 2150
Houston, Texas 77002
www.ajamie.com
713 860 1600 telephone
713 860 1699 facsimile

**To:** The Honorable Cynthia M. Rufe

**Firm/Company:** United States District Court, Eastern District of Pennsylvania

**From:** Jack Edwards

**Fax No:** 267-299-5077 **Voice/Difficulty No:** ________

**Date:** March 28, 2013 **Total # of Pages:** 5 **Account Code:** 0547.001

## •MESSAGE•

Please see the attached documents.

## NOTICE OF CONFIDENTIALITY

The information contained in and transmitted with this facsimile is

1. **SUBJECT TO THE ATTORNEY-CLIENT PRIVILEGE;**
2. **ATTORNEY WORK PRODUCT; OR**
3. **CONFIDENTIAL.**

It is intended for the individual or entity designated above. You are hereby notified that any dissemination, distribution, copying, or use of or reliance upon the information contained in and transmitted with this facsimile by or to anyone other than the recipient designated above by the sender is *unauthorized* and *strictly prohibited*. If you have received this facsimile in error, please notify Ajamie LLP by telephone at (713) 860-1600 immediately. Any facsimile erroneously transmitted to you should be immediately returned to the sender by U.S. Mail, or if authorization is granted by the sender, destroyed.

**If you do not receive all pages, please call: (713) 860-1600 for assistance.**

Case 2:09-cv-04730-CMR Document 126-3 Filed 03/28/13 Page 6 of 6

AJAMIE LLP

Pennzoil Place - South Tower
711 Louisiana, Suite 2150
Houston, Texas 77002
www.ajamie.com
713 860 1600 telephone
713 860 1699 facsimile

**To:** The Honorable Cynthia M. Rufe

**Firm/Company:** United States District Court, Eastern District of Pennsylvania

**From:** Jack Edwards

**Fax No:** 267-299-5077 **Voice/Difficulty No:** ______

**Date:** March 28, 2013 **Total # of Pages:** 5 **Account Code:** 0547.001

**•MESSAGE•**

Please see the attached documents.

## NOTICE OF CONFIDENTIALITY

The information contained in and transmitted with this facsimile is

1. SUBJECT TO THE ATTORNEY-CLIENT PRIVILEGE;
2. ATTORNEY WORK PRODUCT; OR
3. CONFIDENTIAL.

It is intended for the individual or entity designated above. You are hereby notified that any dissemination, distribution, copying, or use of or reliance upon the information contained in and transmitted with this facsimile by or to anyone other than the recipient designated above by the sender is *unauthorized* and *strictly prohibited*. If you have received this facsimile in error, please notify Ajamie LLP by telephone at (713) 860-1600 immediately. Any facsimile erroneously transmitted to you should be immediately returned to the sender by U.S. Mail, or if authorization is granted by the sender, destroyed.

**If you do not receive all pages, please call: (713) 860-1600 for assistance.**